[Crim. No. 473.   Department One.—December 8, 1898.]

## THE PEOPLE, Respondent, v. JAMES CUFF, Appellant.

CRIMINAL LAW—INSTRUCTION—POWER TO PRODUCE STRONGER EVIDENCE.— An instruction based upon subdivisions 6 and 7 of section 2061 of the Code of Civil Procedure, in reference to the effect of the failure of a party to produce stronger and more satisfactory evidence than that offered when in his power to do so, ought rarely, if ever, to be given in a criminal case in which the jury are the sole and exclusive judges of the weight of evidence; and if the only plausible application of such an instruction is to the failure of the defendant to testify in his own behalf, it is prejudicially erroneous.

ID.—ATTEMPT TO KILL BY POISON—EVIDENCE—COLLATERAL FACTS.—Upon the trial of a defendant charged with an attempt to kill a person named by the administration of poison, consisting of strychnia, the evidence of which was circumstantial, evidence of collateral facts, tending to connect the defendant with other events and offenses of a different character and in relation to other persons, occurring some time previous to the offense charged, which did not in any appreciable degree tend to show a motive for the attempted murder, is inadmissible.

ID.—PURCHASE OF CHLOROFORM BY DEFENDANT.—It may be proved that

chloroform was purchased by the defendant, and was in his possession when arrested, as tending to show to some degree his intention toward the person to whom poison was administered.

Id.—Conversations with Defendant—False Explanations.—Conversations had with the defendant by a witness, in which he gave false reasons for being in the place where the poison was administered, on the day of its administration, are relevant and competent evidence for the prosecution.

Id.—Motive of Offense—Rivalry of Suitors—Evidence that the defendant was an unsuccessful rival of the person poisoned, and a persistent suitor for the hand of a young lady to whom the person poisoned was engaged to be married, and that that person had seen one who resembled the defendant in company with her and another young lady prior to the date of the poisoning, is admissible as tending to show a motive for the alleged crime.

Id.—Reprehensible Details Inadmissible.—The rivalry of the suitor should only be shown generally; and it was not admissible to prove reprehensible details of the defendant's courtship.

Id.—Purchase and Possession of Strychnia—Rebutting Evidence.—After proof by the prosecution of the purchase of strychnia by the defendant, and his possession of it when arrested for the crime of administering it with intent to kill, it is error to exclude rebutting evidence tending to show that defendant was a farmer, and that the farmers generally in the neighborhood where he resided purchased strychnia, and had it in their possession for the purpose of poisoning "varmints."

Id.—Sufficiency of Information—Single Offense—Error in Date.—An information charging an attempt to kill by administering poison does not charge two offenses. and a false date inserted therein is not fatal to the information. Such date should be corrected, but the failure to correct it is immaterial where the pleader charged the offense to have been committed in the proper year, and prior to the filing of the information.

APPEAL from a judgment of the Superior Court of Modoc County and from an order denying a new trial. J. W. Harrington, Judge.

The facts are stated in the opinion of the court.

G. F. Harris, and D. W. Jenks, for Appellant.

William F. Fitzgerald, Attorney General, and Charles H. Jackson, Deputy Attorney General, for Respondent.

GAROUTTE, J.—The defendant has been convicted of a felony, alleged to have consisted in an attempt to kill one Miller by

administering poison. The evidence is entirely circumstantial, but tends to show that defendant surreptitiously placed the poison, strychnia, in the sugar bowl out of which Miller was in the habit of using sugar, and out of which, in fact, upon this eventful day he used sugar, and nearly died as a result. The evidence is sufficient to support a finding of fact that Miller suffered from strychnia poisoning, and that defendant was the instrument by which it was administered. The case is one of circumstantial evidence alone, and the prosecution at the trial relied upon innumerable and somewhat minute circumstances to establish the two aforesaid salient facts. The defendant pleaded not guilty, and, in addition to denying the commission of the act, claimed that he was insane at the time.

The following instruction of the court should not have been given to the jury: "The court instructs you that the evidence is to be estimated, not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce and of the other to contradict, and, therefore, that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust." The basis for this instruction is found in section 2061 of the Code of Civil Procedure, subdivisions 6 and 7. We have had occasion in the past to examine various subdivisions of this section, and to point out the error of applying the principles there declared to cases indiscriminately. (*Kaufmann v. Maier*, 94 Cal. 283; *People v. O'Brien*, 96 Cal. 180.) Indeed, as to subdivisions 4, 6 and 7 of the section, upon the trial of criminal cases it were best they should not be noticed, for, as generally applied, they trench upon the constitutional rights of the defendant in depriving him of a verdict rendered by jurors who are the sole and exclusive judges of the weight and effect of evidence. The danger lurking in these subdivisions of the section is found in the fact that they attempt to deal with the weight and effect of evidence—matters for the jury and not matters for legislative action. The aforesaid section of the code declares that the principles stated in the various subdivisions thereof may be given by the court to the jury upon all proper occasions. In criminal cases the proper occasions are so few and the improper occasions are so many that it were best they should be given rarely, if at all. The instruc-

tion given in this case fully and fairly illustrates the danger sug-
gested. Let us consider one objection to it. Here there is no sug-
gestion whatever in the record that any important witness could
have been produced by the defendant before the jury and was
not produced. Under such circumstances, certainly the occasion
was not a proper one upon which to give the instruction. But,
upon the other hand, the defendant did not take the witness
stand, and the practical application of the instruction necessarily
points to that fact as a strong circumstance to be taken against
him. To the ordinary mind there seems to have been no other
reason or purpose in the giving of the instruction. Yet a de-
fendant has the constitutional right to stand mute and demand
that the prosecution prove a case against him beyond a reason-
able doubt. (*People v. Streuber*, 121 Cal. 431.) Aside from the
exception mentioned in the O'Brien case, we think the principles
embraced in these subdivisions of section 2061 had best not be
given to juries in criminal cases.

The defendant was a rejected suitor for the hand of a young
lady, Miss Lush. Miller, the man alleged by the information to
have been poisoned, was apparently more successful in securing
her kind graces. It is claimed upon the part of the prosecution
that for these reasons revenge was the motive actuating the
defendant in the administration of the poison. Presumably in
support of this theory of revengeful motive actuating the heart
of the defendant, a great mass of evidence was introduced un-
der objection. We say this evidence was introduced presumably
in support of the motive theory, for we are entirely unable to
conjecture any other ground upon which to base even a conten-
tion of its legal admissibility. The scene giving rise to this case
is laid in the village of Alturas, and all the parties concerned
lived in and about the village. John E. Raker resided in the
village, Miss Lighty lived at his residence. During the ab-
sence of himself and family, at a period shortly before the time
this offense is claimed to have been committed, Miss Lush spent
several nights with Miss Lighty as her companion. Miller lived
a considerable distance from the Raker residence. The mass of
evidence introduced went to the effect that upon several nights
during this period some person had secretly gained entrance to
the Raker residence; that a handkerchief had been found upon

the floor of one of the rooms upon the following morning after one of these mysterious visits, which handkerchief was probably the handkerchief of the defendant; that some articles of trifling value belonging to one of the young ladies had been taken from the house at these times and were afterward found in the possession of the defendant; that Raker's dog was found poisoned in the yard; that mysterious noises were heard in and about the house and footprints found in the yard. Following this line of evidence it was attempted to connect defendant with all this mysterious work, and for present purposes alone it may be conceded that this attempt was successful. Upon this concession we are clear that the whole mass of evidence should have been rejected as improper matter to go before the jury. That this character of evidence was prejudicial to defendant cannot be gainsaid for a moment. But that it in any appreciable degree tended to show the motive for the attempted murder of Miller must be denied. These events all occurred some time before the offense here under investigation was committed. Miller was not at the house of Raker at the time, and possibly not in the neighborhood. He is in no way connected with these midnight visits, and the entire evidence is collateral to the question at issue and foreign to the investigation at hand.

The offense was committed about August 26, 1896. A doctor testified that upon the 9th of August he gave the defendant a prescription calling for chloroform. It was also shown that the chloroform was obtained by defendant. Miss Lighty testified that after one of these mysterious midnight visits already referred to, she smelled chloroform in her room the following morning. This item of testimony was clearly irrelevant and incompetent. As to the purchase of the chloroform, and the subsequent possession of it by defendant when arrested, it was proper evidence as tending to show to some degree defendant's intentions toward Miller.

Conversations had with defendant by the witness Beecher were relevant and competent evidence. If the defendant gave false reasons for being in the town of Alturas upon this particular day, the prosecution had the right to show that fact. The same rule also applies to the statements made by defendant as to his visit to the Dorris ranch. Miller's testimony as to seeing

a party resembling the defendant when he was in the company of the two aforesaid young ladies, some weeks prior to the 26th of August, was also properly admitted.

For the purpose of establishing a motive for the crime the prosecution was permitted to show that the defendant had been a persistent and unsuccessful suitor for the hand of Miss Lush, and that Miller was the successful suitor. While the establishment of these facts was entirely proper, the matters should have been shown generally, and the details of defendant's conduct in the manner of his courtship were not proper evidence. Evidence was introduced in detail as to this point, and his conduct was clearly reprehensible and was such as to prejudice the jury against him. At the same time, it was not germane to the question upon trial and should have been kept from the jury.

The prosecution offered evidence tending to show that defendant had purchased strychnia, and had it in his possession at the time of his arrest. To rebut the effect of this evidence it was proposed to show that other persons living in the neighborhood where defendant resided purchased strychnia, and had it in their possession. Defendant owned a ranch, and it was proposed to show that ranchers generally in that locality had strychnia in their possession for the purpose of poisoning "varmints." This character of evidence was improperly rejected. It had a direct and legitimate tendency to weaken the effect of the evidence showing the possession of strychnia upon the part of defendant.

The information charging defendant with the offense was not objectionable upon the ground of duplicity. (*People v. Thompson*, 111 Cal. 246.) The further objection to the information, made by reason of the false date inserted therein, is not fatal to it. The court should have corrected the error by some appropriate proceeding, but defendant has suffered no possible injury by reason of the mistake made and the failure of correction. The pleader charged the offense to have been committed in 1896 and prior to the filing of the information. (See *People v. Dinsmore*, 102 Cal. 381.)

We have examined with care other points made by defendant's counsel, and find nothing further demanding extended consideration. We see no serious objection to the remaining instructions given by the court to the jury.

For the foregoing reasons the judgment and order are reversed and the cause remanded for a new trial.

Van Fleet, J., and Harrison, J., concurred.