[Crim. No. 1255.  First Appellate District, Division Two.—October 2, 1925.]

THE PEOPLE, Respondent, v. JOHN SMITH, Appellant.

[1] Criminal Law—Robbery—Evidence—Verdict.—In this prosecution for the crime of robbery, the evidence was sufficient to support the verdict of guilty.

[2] Id.—Identification—Fact for Jury.—In such prosecution, though defendant was not positively identified as one of the parties to the crime his general description tallied with that given by the witnesses and it was for the jury to determine whether this method of identification was sufficient.

[3] Id.—Evidence.—In such prosecution, defendant's possession of the stolen articles immediately after the commission of the offense, that is to say, his efforts to dispose of the jewelry and his failure to deny the accusation of another that the jewelry had been given him by defendant and the latter's companion, and his failure to make answer to a written accusation clearly involving him in the commission of the robbery, were all circumstances which the jury was justified in taking into consideration in fixing upon the defendant the responsibility for the crime.

[4] Id.—Possession of Stolen Property—Corroborative Evidence.— While possession of the stolen property immediately following a robbery is not in itself sufficient evidence to warrant a verdict of robbery, nevertheless slightly corroborative evidence of other inculpatory circumstances taken with the evidence of possession of the stolen property is sufficient to support a conviction.

[5] Id.—Verdict—Instructions.—In such prosecution, if there was sufficient evidence to warrant the jury in arriving at a verdict

---

2.  See 8 Cal. Jur. 169.
3.  See 22 Cal. Jur. 861.
5.  See 8 Cal. Jur. 285.

of guilty, the giving of a requested instruction advising the jury to return a verdict of not guilty would have been improper.

[6] ID.—CREDIBILITY OF WITNESSES—INSTRUCTIONS.—In such prosecution, no prejudicial error arose from the failure to give defendant's requested instruction relating to the degree of credit which should be given to the various witnesses and particularly to the right of the jury to reject the entire testimony of a witness shown knowingly to have testified falsely on the trial.

[7] ID.—ADMISSION IN EVIDENCE OF PISTOL—ABSENCE OF ERROR.—In such prosecution, there was no error in admitting in evidence a pistol which was found in the shop of a witness at the time of the arrest of the defendant and his codefendant, where the pistol was discovered by the arresting officer in the presence of the defendant and his codefendant and at that time and while all of these parties were present said witness told the police officer that the pistol belonged to said codefendant, and no denial was made by either the latter or the defendant and the pistol was later identified as one used by the parties in the commission of the robbery.

[8] ID.—RELATIONSHIP BETWEEN CODEFENDANT AND EMPLOYEE—EVIDENCE.—In such prosecution, there was no error in the admission of the testimony covering the relationship of the codefendant and the cook at the home of the victims of the robbery, as such evidence went to show the methods by which the parties gained entrance to the home for the purpose of committing the robbery.

[9] ID. — ACCUSATORY STATEMENT — PURPOSE OF — INSTRUCTIONS.—In such prosecution, there was no prejudicial error from the refusal to give defendant's requested instruction to the effect that a certain written statement, which had been read to the defendant and his codefendant while they were under arrest, should not be taken as evidence against the defendant of the facts stated therein, but that it should be used solely for the purpose of evidencing the conduct of the defendant while it was being read to him and thereafter, where when such statement was offered in evidence it was distinctly stated that such was the purpose of the offer and at that time the trial judge clearly informed the jury that it was an accusatory statement only to show the conduct of the defendant at the time and nothing else "and they are not to consider any of these facts as being proven, or that this statement in any way tends to prove the facts," and in closing his formal instructions the trial judge advised the jury regarding the evidence of a defendant standing mute in the face of an accusation and "That the reason for admitting the accusation in such cases is to ex-

plain the conduct of the accused" and "regarding statements which may have been read, that they are not, of themselves, to' be taken as independent evidence of the facts therein contained."

---

(1) 17 C. J., p. 255, n. 56, p. 256, n. 60, 67, p. 270, n. 17; 34 Cyc., p. 1808, n. 78, p. 1809, n. 82 (2) 34 Cyc., p. 1810, n. 89. (3) 34 Cyc., p. 1808, n. 75, p. 1809, n. 82. (4) 17 C. J., p. 223, n. 38; 34 Cyc., p. 1809, n. 82. (5) 16 C. J., p. 936, n. 75. (6) 16 C. J., p. 1041, n. 15. (7) 16 C. J., p. 618, n. 34. (9) 34 Cyc., p. 1806, n. 67. (9) 16 C. J., p. 1063, n. 85.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. Pat R. Parker, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Leslie Hubbard and Hubbard, Hubbard & McClellan for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

NOURSE, J.—The defendant was convicted upon information charging him and one Edward Egan jointly with the crime of robbery. The two were separately tried and the defendant has appealed from the order denying him a new trial and from the judgment.

The facts of the case are that on the twenty-eighth day of October, 1924, the complaining witnesses, Mr. and Mrs. P. I. Jacoby, returned to their home in Jackson street, in the city and county of San Francisco, at about 12 o'clock midnight and retired to their sleeping apartments upon one of the upper floors of the building. Their home had two entrances, one in the front of the house, through which they entered, and another in the rear, which was known as the tradesmen's entrance, and was used by servants of the family. When the Jacobys entered their sleeping apartment two men, both masked and armed with black automatic pistols, confronted them and after robbing them of jewelry of the value of over $12,000, locked them in a closet and left without disturbing anything else in the house. When the Jacobys escaped from the closet they telephoned

to the police and immediately gave them a description of the bandits and of the jewelry which had been taken. They then examined the premises and found that none of the doors or windows had been disturbed, but that the rear door, or the tradesman's entrance, was unbolted. At this time the Jacobys had in their employ two servants, namely, Delia Cooney, a cook, and Maria Beraudiere, a second maid. The Jacobys had left their home at 7 o'clock that evening with the intention of spending the evening with friends and the two servants were the only other occupants of the house at the time.

Three days after the night of the robbery the defendant, Egan, and one Harry Wright were arrested while seated in a Ford sedan which was parked outside of Wright's cleaning and pressing establishment. At the time they were talking to a woman by the name of Mamie Manning. The three men and the woman were all taken into Wright's place of business and following a search the Jacoby jewels with one exception were found in Wright's pocket. At that time in answer to the question from the police officers Wright stated in the presence of both the defendant and Egan that he had obtained the jewels from those two. Of this accusation neither the defendant nor Egan made any denial. At the same time upon a search of the premises a black automatic pistol was found as to which Wright stated at the time that he had seen the pistol in Egan's possession that morning. To this no reply was made by either the defendant or Egan. On the same day while all the parties were present at the police station Wright made a written statement which directly charged defendant and Egan with the robbery. This statement was later read to both the defendant and to Egan in Wright's presence and these two were asked whether they had anything to say regarding it and both failed to make answer. At the same time it was brought out that Delia Cooney, the cook in the Jacoby home, was a sister-in-law of Egan, and that a short time before the robbery the two Jacoby servants had visited a home in the city where they had met Egan and Mamie Manning, the woman who was with the defendant and Egan at the time of their arrest.

At the trial all the facts were placed before the jury for the purpose of showing the circumstances surrounding the condition of the robbery and the methods by which the par-

ticipants of the crime were able to gain entrance into the Jacoby home and conceal themselves for the single purpose of obtaining the jewelry which the Jacobys were wearing at the time. Evidence was also offered that upon the day before defendant's arrest he had approached one Abe Cohn, a pawnbroker, telling him that he knew some people who had some jewels to sell, describing them as a string of real pearls, bracelets, rings and earrings (the identical articles which were the subject of the robbery) and endeavored to persuade Cohn to either purchase or arrange for the purchase of the same. When the parties were arrested on October 31st they were seated in a Ford sedan which was similar to one which a witness testified he had seen parked in front of the Jacoby place at about 7:30 on the evening of the robbery and again at 11:30 of the same night. Though the complaining witnesses were not able to positively identify either the defendant or Egan as the bandits who had attacked them on the evening in question, the description of them given at that time closely tallied with the defendant and Egan, and it was upon this description that the police officers were able to identify the two whom they subsequently arrested. It appears that on the day following the arrest both Mr. and Mrs. Jacoby were taken to the police station for the purpose of identifying the defendant and Egan as being the participants in the robbery. When Mrs. Jacoby was confronted by the defendant and Egan she stated in answer to the question by one of the police officers that she did not recognize them, but "may be they recognize me." Whereupon both defendant and Egan "snickered" but made no further reply.

[1] The main attack of the appellant is based upon the ground that the evidence is insufficient to support the verdict. At the outset it may be conceded that the evidence connecting the appellant with the commission of the crime is scanty, as is usually the case in cases of this nature where the party committing the crime by masking his features partially conceals his identity. But as said in *People* v. *Willard,* 150 Cal. 543, 553 [89 Pac. 124, 128], "This court cannot disturb a verdict unless there is no evidence to support it, or where the evidence relied on by the prosecution is apparently so improbable or false as to be incredible, or where it so clearly and unquestionably preponderates

against the verdict as to convince this court that its return was the result of passion or prejudice on the part of the jury.'' All the evidence in this case was offered by the prosecution. The defendant did not at the time of the trial or at any time subsequent to his arrest make any effort to explain the suspicious circumstances in which he was involved. [2] Though he was not positively identified as one of the parties to the crime his general description tallied with that given by the witnesses and it was for the jury to determine whether this method of identification was sufficient. [3] His possession of the stolen articles immediately after the commission of the offense, that is to say, his efforts to dispose of the jewelry and his failure to deny the accusation of Wright that the jewelry had been given him by appellant and Egan, and his failure to make answer to the written accusation later made by Wright clearly involving him in the commission of the robbery, were all circumstances which the jury was justified in taking into consideration in fixing upon the appellant the responsibility for the crime. As we look upon the entire record we are unable to say that the evidence is any less convincing than that which was before the court and held to be sufficient in *People* v. *Cataline,* 54 Cal. App. 36 [200 Pac. 1060], *People* v. *Reed,* 58 Cal. App. 7 [207 Pac. 1025], *People* v. *Deases,* 60 Cal. App. 170 [212 Pac. 407], *People* v. *Peterson,* 61 Cal. App. 63 [214 Pac. 247], and *People* v. *Ross,* 61 Cal. App. 61 [214 Pac. 267].

[4] While it is true that possession of the stolen property immediately following a robbery is not in itself sufficient evidence to warrant a verdict of robbery, nevertheless slightly corroborative evidence of other inculpatory circumstances taken with the evidence of possession of the stolen property is sufficient to support a conviction. (*People* v. *Cataline,* 54 Cal. App. 36 [200 Pac. 1060].) Putting it in another way, possession of stolen property if unexplained ''is an item to be taken into consideration by the jury, together with other incriminating circumstances in arriving at a verdict.'' (*People* v. *Reed,* 58 Cal. App. 8 [207 Pac. 1026].) Appellant has cited *People* v. *Fitzsimmons,* 144 App. Div. 211 [128 N. Y. Supp. 996], *People* v. *Mullen,* 69 Cal. App. 548 [231 Pac. 588], and *State* v. *Campbell,* 69 Iowa, 556 [29 N. W. 604], as holding that the evidence in

each case was insufficient to sustain the conviction. It would serve no purpose to analyze these cases, for in each instance the holding was merely that there was no evidence of any nature to connect the particular defendant with the commission of the crime of which he was charged. Cases of this nature all depend upon their own facts, and in reaching a conclusion as to whether those facts will sustain a verdict of conviction ''we must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence.'' (*People* v. *Tom Woo*, 181 Cal. 315, 326 [184 Pac. 389, 393].) For these reasons we hold that the evidence is sufficient.

Criticism is also made of the action of the trial judge in refusing to give certain instructions proposed by the appellant. [5] Instruction No. 1 advised the jury to return a verdict of not guilty. It is evident, of course, that if there was sufficient evidence to warrant the jury in arriving at a verdict of guilty this instruction would have been improper. [6] Objection is also made to the failure of the trial judge to give instruction No. 7 relating to the degree of credit which should be given to the various witnesses and particularly to the right of the jury to reject the entire testimony of a witness shown knowingly to have testified falsely on the trial. The attorney-general concedes that this instruction was a proper one and that it should have been given, but insists that its refusal does not constitute prejudicial error. We have read the entire record with care and are satisfied that no prejudicial error arose from the failure to give this instruction, and, in fact, this seems to be conceded by the appellant as he has not pointed to a single incident in the course of the trial to which the instruction might have been applicable.

[7] Objection is also made to the action of the trial judge in admitting in evidence the pistol which was found in the shop of the witness Wright at the time of the arrest of the appellant and Egan. In this connection *People* v. *Mullen*, 69 Cal. App. 548 [231 Pac. 588], is cited and it is argued that the cases are parallel. We see a clear distinction between the Mullen case and this inasmuch as in this case the pistol was discovered by the arresting officer in the presence of the appellant and his codefendant and at that time and while all these parties were present Wright told

the police officer that the pistol belonged to Egan. No denial was made by either Egan or the appellant and the pistol was later identified as one used by the parties in the commission of the robbery. It thereupon became a material link in the chain of circumstances and was properly admitted in evidence. [8] We see no error in the admission of the testimony covering the relationship of Egan and Delia Cooney, the cook at the Jacoby home, as this evidence went to show the methods by which the parties gained entrance to the Jacoby home for the purpose of committing the robbery.

[9] Objection is also made to the refusal of the trial judge to give to the jury appellant's proposed instruction No. 8, to the effect that the written statement of Harry Wright, which had been read to the appellant and his co-defendant while they were under arrest, should not be taken as evidence against the appellant of the facts stated therein, but that it should be used solely for the purpose of evidencing the conduct of the appellant while it was being read to him and thereafter. When the written statement was offered in evidence it was distinctly stated that such was the purpose of the offer and at that time the trial judge clearly informed the jury that it was an accusatory statement only to show the conduct of the appellant at the time and nothing else "and they are not to consider any of these facts as being proven, or that this statement in any way tends to prove the facts." In closing his formal instructions the trial judge advised the jury regarding the evidence of a defendant standing mute in the face of an accusation and "That the reason for admitting the accusation in such cases is to explain the conduct of the accused"; and again "regarding statements which may have been read, that they are not, of themselves, to be taken as independent evidence of the facts therein contained." We see no prejudicial error resulting from the refusal to give the instruction as requested by appellant.

Other grounds urged by the appellant do not require consideration.

Judgment and order affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 30, 1925.