[Crim. No. 1941. Second Appellate District, Division One.—June 10, 1930.]

THE PEOPLE, Respondent, v. HANS M. ANDERSON, Appellant.

Kirtland I. Perky for Appellant.

U. S. Webb, Attorney-General, John W. Maltman, Deputy Attorney-General, and Warner I. Praul for Respondent.

HOUSER, J.—Defendant was convicted of the crime of robbery. He appeals from the ensuing judgment, as well as from an order by which his motion for a new trial was denied.

The only issue presented on the trial of the action related exclusively to the identification of defendant as the man who committed the robbery. In that connection, on direct examination as a witness, although the robber was masked, a Japanese who was robbed in his place of business positively identified defendant as the robber, and stated that a part of the sum of money of which he was robbed was contained in a wallet, and that the total sum amounted to about $51. His testimony was fully corroborated by another Japanese who was present at the time the robbery was committed. In addition thereto, a third witness, who was apparently unwilling to give testimony, and whose memory of events appeared somewhat defective, admitted that, although on the day when the trial of the action occurred she could not well recall the facts, at the time when she gave former testimony on the preliminary examination of defendant she "must have" testified that on the night when the robbery occurred defendant had a "gun" in his possession and stated to the witness that he had robbed "a chop suey joint, . . . between fifty and fifty-one dollars, and he was laughing about it, the way he had tricked the Japanese people. . . . He had a wallet, too, and it was a Japanese name."

The weight of the evidence and the credit which was to be given to the testimony of the several witnesses was addressed solely to the consideration of the jury, and its

conclusion thereon is final. In such circumstances, and in view of the evidence in substance hereinbefore stated, the contention of appellant that the evidence was insufficient to support the verdict cannot be sustained.

 ·Appellant also specifies prejudicial error occurring on the trial of the action in that the trial judge usurped the function of the jury by using language in which the guilt of defendant was assumed. The alleged misconduct of the judge of the trial court in that particular arose from the following situation: At a time when a Japanese witness was being cross-examined by the attorney who represented defendant in the action, he was asked by such attorney the following question:

"Q. How long was this man who robbed you, in your place of business? How long did he stay there from the time you first saw him until the time he left?"

At this point the judge of the trial court asked the following question:

"The Court: How long was he in there? A. Myself?

"The Court: No, the defendant, the man that robbed you."

It also appears that on two other occasions which occurred during the trial, on questioning the same witness, the judge of the trial court used language which indicated that defendant was the man who robbed the Japanese. The language to which exception is now taken by appellant was as follows:

"The Court: Make a little cross there where the BF is, where the defendant came when he took your billfold, just put a little cross there where he stood.

"The Witness: For myself?

"The Court: No, for him, when he took the billfold."

Appellant admits that at no time did he object to either of such remarks, or in any manner indicate to the trial judge that he had made use of language which was prejudicial to defendant, or which might possibly be so considered. His declaration at this time that the reason for his silence was that by directing attention to the objectionable language "would only have accentuated and intensified the prejudice engendered," is somewhat weakened by the fact that almost immediately following the last criticised remark by the court, when the attorney for defendant resumed his cross-examina-

tion of the witness, he asked the witness the following question:

"Mr. Perky (Attorney for defendant): Q. Now, the time that this robbery took place, what time of night was it? A. About fifteen minutes before twelve.

"Q. How was the *defendant* dressed?"

It also appears that prior thereto, in circumstances wherein the attorney for defendant was endeavoring to have the witness elucidate the diagram which he had placed on the blackboard, the following question was put to the witness:

"Q. What does this represent? A. This is closet, hanging clothes in here, we have closet here, and here is the door right in here.

"Q. This represents the *defendant?*"

"Q. Where did the *defendant* come for the billfold; where did he get the billfold?"

When it is considered that the witness was a Japanese who was perhaps not altogether familiar with our language, and that before either of the occasions to which reference has been had occurred, he had positively identified defendant as the robber, it is clear that no harm resulted from the palpable attempt on the part of the trial judge to have the witness clearly understand, first, the question which had theretofore been addressed to him by the attorney for defendant; and, secondly, in order that in making the diagram the witness would be clear and accurate. It is most apparent, especially after the witness had identified defendant as the robber, that everyone connected with the examination of the witness assumed that all his testimony was directed to the point of identifying defendant as the man who committed the crime, and the references by the trial judge to which attention has been directed could not have been understood by the jury as any indication that the trial judge was either attempting to state any fact, or that he had any opinion with reference to the guilt of defendant.

Finally, it is contended that the trial court erred in refusing defendant's request to give to the jury a certain instruction which particularly required the jury to be convinced beyond a reasonable doubt of the identity of defendant as the robber before it would be justified in finding defendant guilty as charged in the information. But when it is considered that the identity of defendant as the robber

was the sole question in the case, and that in each of two separate instructions in effect the trial court fully instructed the jury that it could find defendant guilty only in the event that it believed from the evidence beyond a reasonable doubt that defendant "feloniously took from the person or the immediate presence of Henry Hasegawa the property, or any part thereof," it becomes manifest that in the refusal by the trial court to give to the jury the instruction to which appellant refers, no error was committed.

No prejudicial error appearing, it is ordered that the judgment and the order denying the motion for a new trial be and they are affirmed.

Conrey, P. J., and York, J., concurred.