[Crim. No. 3351. Second Appellate District, Division One.—July 12, 1940.]

THE PEOPLE, Respondent, v. ADOLPHUS HIGHTOWER, Appellant.

David Lynn for Appellant.

Earl Warren, Attorney-General, and Burdette J. Daniels, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County appellant and one George Joseph were accused in count one of the crime of robbery; counts two and three alleged the commission by them of the crime of attempted robbery; while in count four they were charged with the offense of attempted murder. Trial before a jury resulted in verdicts finding defendants guilty as charged on counts one, two and three of the information and not guilty of the offense set forth in count four. From the judgment and the order denying his motion for a new trial, defendant Adolphus Hightower prosecutes this appeal.

 Viewing the evidence in the light most favorable to the prosecution, as we are required to do following guilty verdicts, we find in the record testimony that about 8:30 o'clock on the evening of September 16, 1939, three men entered the El Mirador Market at Watts in Los Angeles County, and at the point of guns held up the employees working therein. At the time of the entry of the robbers there was in the market an elderly couple who had just completed purchasing some merchandise, together with six employees, the latter of whom were making preparations to close the market for the day. At the time the intruders entered an employee named Paul Chavez was in the act of closing the front doors. The defendant George Joseph approached Pedro Espinosa,

an employee working in the grocery department of the market, and at the point of a gun compelled him to go to a store room located in the rear portion of the establishment. After Espinosa and other employees were back in the store room, defendant Joseph demanded that they empty their pockets. About the same time defendant Joseph approached Espinosa the appellant, Adolphus Hightower, ran over toward the meat market section with a gun in his hand, where one Perez, the manager of the market, and another employee were working, and at which time appellant said, "Throw up your hands." At the time this command was given the manager, Perez, "grabbed a cleaver", which action being noticed by appellant, the latter fired his gun and Perez fell to the floor, feigning injury. No one was struck by the shot and the bullet lodged in an adjacent wall. Immediately after firing the shot appellant jumped over the counter toward the location of the cash register, where another employee was standing, and ordered the latter back to the store room, to which place he was followed by appellant. The victims were relieved of a small amount of money. A few days after the robbery police officers found a .45 revolver under a house where appellant was residing.

As a first ground of appeal it is urged by appellant that the evidence is insufficient to sustain the verdicts, mainly because of the claimed failure to sufficiently identify appellant as one of the robbers. That such contention cannot be sustained is evidenced by the testimony given by one of the victims, Paul C. Chavez, who testified that he was closing the front door of the market at the time the three men entered, and that when appellant Hightower entered the north door of the market he had a gun in his hand. Concerning his identification of appellant, we find in the record the following:

"Q. Just what you saw and what you heard and what you know yourself. A. I heard a lot of commotion at the other door, and I saw that boy over there running toward the meat counter; then I heard a shot. Q. What do you mean—wait a moment. A. I saw that boy in the blue jacket running fast, very sudden. Q. That is the man sitting along by Mr. Lynn, that is Hightower? Is that right? A. All right, Mr. Hightower. Q. You saw him running in from

the north door? A. Yes. Q. What did he do? A. He ran up to the meat counter; then I heard a shot. I saw him over in that little space, then he fired, and then the boss is down; then the next thing I saw is Mr. Joseph, he was taking the other boy inside the store room, and the third person, he is not here. . . . Q. What did you hear and see in that respect? A. Well, I heard a shot, and then I saw Mr. Perez fall and then we were forced into the store room. Q. Who did you see there with any guns near Mr. Perez, at the time the shot was fired? A. At that time? Q. Yes. A. Mr.— Mr.— Mr.— Hightower. . . . Q. Then one of them started running toward the rear? A. Toward this end, and then this boy and the others stayed near the front. Q. That is, two of them were over here, and did the other one go on a run or a walk? A. At the time Mr. Joseph—at the time I didn't see Mr. Joseph do any running, but I did see Mr. Hightower do some running and walking fast. . . . Q. The one you say is Hightower, how was he dressed? A. He was dressed with a coat and sort of a cap. Q. Sort of a cap? A. Yes. Q. Was it a cap or a hat? A. Some kind of a cap. . . . Q. Where did you stay and what did you do? A. I stayed there where the others was, and then Mr. Hightower passed the door and said something to him and then Mr. Joseph closed the door and told us not to move until five minutes, or something like that, and stay there, or something like that, and then they went out. . . . ''

By way of corroboration of the foregoing, we find in the record testimony given by another victim, Pedro Mejia, whose testimony in connection with the participation of appellant in the robbery was as follows:

''Q. Now, the one that came straight to the meat section, do you know who that was? A. As I said before the one that it seemed to me, he was the one—that boy there with the sweater on. Q. That is, the green coat? A. Yes, the one in the green sweater. Q. That is the defendant Hightower. How close to you did he get? A. Just before he fell, he got right up alongside of me and opened the cash register. Q. Who fell? A. When the shot was fired, the boss fell to the floor and he didn't get up again. Q. How close to you or to the boss did the man get who fired the shot? A. He jumped over where the scale was, jumped over the counter

and stood alongside the cash register and I remained there, standing. Q. Then he was right up near you, is that it, close to you? A. Well, pretty close, almost touching me, and he then put the pistol up against me and said to go back into the room. . . . Q. Now, did you walk back from the butcher shop to the back room backward, or did you walk forward? A. I went walking forward and he was walking along with me. Q. And who was walking along with you? A. The one that fired the shot. Q. Do you know who that is now? A. That is the man, the same one I told you. Q. Which one was it, just tell us again. A. The two who are here. The two who are here; he was the one there who fired the shot. No one else fired any shot. Q. Which one went with you or followed you back to the back room? A. The one with the green jacket.''

Obviously, from his previous testimony, when the witness referred to the ''one with the green jacket'', he was designating appellant Hightower, who had fired the shot and who walked with the witness back to the store room.

While the claimed inconsistencies in the testimony of the foregoing witnesses, such as the positions they were in at the time when they claimed ability to see and identify appellant, as well as other claimed weaknesses in their testimony, undoubtedly afforded grounds for a forceful argument to the jury, nevertheless they cannot avail appellant as grounds for a reversal, because the evidence identifying a defendant as the perpetrator of the crime charged need not be positive and uncontradicted. As stated in *People* v. *Farrington*, 213 Cal. 459 [2 Pac. (2d) 814]: ''The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony, if there were any, and the uncertainties of witnesses in giving their testimony, were matters solely for the observation and consideration of the jurors in the first instance, and for the consideration of the trial court on motion for a new trial. It has approved the finding of the jury, and on appeal this court may not disturb such finding and the action of the trial court unless we can say, as a matter of law, that there was no evidence to support the conviction.'' Undoubtedly because reviewing judges are obviously in no position to determine the credit which should be accorded to witnesses or to weigh their testimony, our

Constitution provides that appellate courts are without authority to review evidence except where, on its face, it may justly be held to be insufficient to support the ultimate issue involved, in which latter case of course it is not a review of a question of fact, but purely one of law. The jury being the exclusive judges of the credibility of witnesses (Code Civ. Proc., sec. 1847) and of the effect and value of evidence addressed to them, except as modified by section 2061 of the Code of Civil Procedure, they were in this case justified, if they conscientiously felt warranted in so doing, after full and fair consideration thereof, to reject any testimony or circumstances which might have been contradictory to or inconsistent with testimony identifying appellant as hereinbefore narrated. We perceive nothing in the testimony identifying appellant that would warrant us in saying that such testimony is not true or is improbable upon its face.

We cannot agree with appellant that the trial court erred in admitting into evidence a revolver which was found by the police officers under the house where appellant lived. There is in the record positive evidence that all three participants in the robbery were armed, and while it is true that the gun admitted in evidence was not positively identified as one of those used in the robbery, nevertheless, appellant's objection to this evidence runs rather to its weight than to its admissibility. (*People* v. *Stoerkel,* 87 Cal. App. 336, 339, 340 [262 Pac. 825].) *People* v. *Hale,* 81 Cal. App. 734 [254 Pac. 639], is authority for holding that even if the revolver were not admissible in evidence as proof that it was used in committing the robbery, it was admissible for ''the purpose of showing that the defendants had the means of doing what the witness had charged them with doing''. The fact that there was testimony that the gun introduced in evidence was similar to one of those used in the robbery, coupled with the fact that it was found on the premises where appellant had resided, sufficiently satisfies the rules of law to warrant its reception into evidence. (*People* v. *Ferdinand,* 194 Cal. 555 [229 Pac. 341] ; *People* v. *Elliott,* 104 Cal. App. 107, 110 [285 Pac. 401] ; *People* v. *Lewis,* 110 Cal. App. 381, 384 [294 Pac. 22] ; *People* v. *Raucho,* 8 Cal. App. (2d) 655, 666 [47 Pac. (2d) 1108] ; *People* v. *Smith,* 74 Cal. App. 510, 516 [241 Pac. 267].)·

■ We find no merit in appellant's contention that the court erroneously refused to give certain instructions proffered by appellant. The requested instruction that the defendant, having taken the witness stand in his own behalf, should have his testimony judged by the same rules as the testimony of any other witness, was properly refused on the authority of *People* v. *Woodward*, 136 Cal. App. 149, 153 [28 Pac. (2d) 36]; *People* v. *Anderson*, 106 Cal. App. 335, 338 [288 Pac. 1095], upholds the trial court in refusing to give additional instructions on the *quantum* of evidence required on the issue of identification. The third instruction requested and refused provided in substance that if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory evidence was within the power of the party, the evidence offered should be viewed with distrust. Although the basis for this instruction is found in subdivisions 6 and 7 of section 2061 of the Code of Civil Procedure, nevertheless the rejection of such an instruction has been held not to be error for the reasons assigned in *People* v. *Cuff*, 122 Cal. 589, 591 [55 Pac. 407]. (See, also, *People* v. *Brown*, 71 Cal. App. 181, 188 [235 Pac. 72], and *People* v. *McInerney*, 30 Cal. App. 283, 284 [158 Pac. 128].) The fourth and last instruction refused advised the jury that the fact that appellant could not recall his whereabouts on the evening of the commission of the robbery should not be considered by the jury as evidence of guilt. Such an instruction invaded the province of the jury and was rightfully rejected. ■ When we remember that instructions must not be singly considered, but in their entirety, the instructions given in the instant case, when so reviewed, are not subject to the criticism urged by appellant. From an examination of all the instructions given, we are convinced that the learned trial judge fully and fairly advised the jury as to the kind, quality and degree of proof required before appellant could be convicted of the charges lodged against him.

By reason of the foregoing, it follows that the judgment and the order denying the motion for a new trial, and each of them, must be affirmed. It is so ordered.

York, P. J., and Doran, J., concurred.