[Crim. No. 3004. First Dist., Div. Two. June 16, 1954.]

THE PEOPLE, Respondent, v. ALONZO SPENCER, Appellant.

Alonzo Spencer, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and William K. Coblentz, Deputy Attorney General, for Respondent.

KAUFMAN, J.—Defendant Alonzo Spencer, appearing in this appeal in propria persona, appeals from judgment after jury verdict finding him guilty of two counts of an indictment that had been returned on October 1, 1953, by the grand jury of the city and county of San Francisco. Count One, on which he was found guilty, charged him with the crime of robbery (Pen. Code, § 211) in that he did on September 16, 1953, feloniously and forcefully take from the person of one Joseph Peterson the sum of $81 against his will and by means of force. Count Two, on which the verdict was not guilty, charged violation of section 503, Vehicle Code, in that he did on September 17, 1953, wilfully, unlawfully and feloniously, drive and take a vehicle owned by the Morrison-Knudsen Company, without the consent of the owner and with intent to deprive the owner of its title. He was found guilty of Count Three, which charged grand theft (Pen. Code, § 487) in that on September 17, 1953, in the city and county of San Francisco, he did wilfully and feloniously take a certain motor vehicle, belonging to the Morrison-Knudsen Company.

On the evening of September 15 and early morning of September 16, 1953, Joseph Peterson, night clerk, was on duty at the Cartwright Hotel, 524 Sutter Street, San Francisco. He was working alone at about 4 a. m. when a man entered the hotel, stood in front of him and pointed a gun at him, telling him that this was a stick-up. Peterson identified this man as the appellant, Spencer. Appellant then

jumped over the counter, told Peterson to remain quiet, and give him the key to the safe. Another person was with appellant, but Peterson was unable to identify him, since he came in a door right behind the office. Appellant had told Peterson to lie on the floor, thus he only saw the second man's feet and heard his voice in conversation with appellant.

Appellant took Peterson's wallet in which there were only a few dollars, and his glasses. Also in the wallet were Peterson's driver's license and a Shell Oil credit card. Peterson was brought to police headquarters after appellant was apprehended, and viewed the line-up. He stepped out of the room while the five men in the line-up changed positions, and then returned to the room and picked out appellant. He denied that the officers had told him whom to pick out. They told him, he said, first to look over the line-up, then go outside and tell them which man he thought was the person who had held him up, then return to the room and put his finger on the man. He said that he followed these instructions in making the identification.

█ Glenn Burdick, an employee of the Morrison-Knudsen Company of San Francisco, had assigned to him by his employer a 1949 Buick Super, License 1B83692, valued at about $1,250. On September 17, 1953, the day after the Cartwright Hotel robbery, Burdick parked his car at about 2 p. m. at 116 Natoma Street in San Francisco, leaving the keys in the car. When he returned at 5 p. m. the car was gone. On September 24, 1953, at about 5 a. m., Officer James Curran of the San Francisco Police saw this same Buick sedan parked on the east side of 7th Street, about 100 feet from the Greyhound Bus Depot. He noticed a citation on the windshield. The windows were down, so he checked the registration and found that it differed from the license plates. In the car was a briefcase and a pair of black shoes. This briefcase was later identified by appellant as his property. The police had the car towed to a garage. Inspector Hoover of the San Francisco Police, on September 28, 1953, found that a General Motors key which had been taken from the personal property of appellant fitted the ignition and started the motor of the Buick which had been towed to the garage.

Burdick, from whom the Buick was stolen, examined it at the garage. He noticed that it had been sideswiped, the license numbers were missing and the key was gone. On the front floorboard of the car he found a duplicate driver's license in the name of Joseph John Peterson. Also in the

car was a Rolls razor; a trip pass made out to appellant for the New York, New Haven and Hartford Railroad; a brown binder; and a pair of black shoes.

John J. Tobin, age 16 years, testified that on the morning of September 16, 1953, he went with another person, a colored man, to the Cartwright Hotel, and held it up. The other party had a gun. They took money from the cash drawer as well as from the clerk, Joseph Peterson. The man with whom he held up the hotel used a razor similar to that found in the stolen Buick. At the time of John Tobin's arrest, Joseph Peterson's Shell Oil credit card was found in his possession. Tobin in testifying at the trial first denied that appellant was the man who held up the hotel with him, but admitted that he had so identified appellant before the grand jury. The prosecuting attorney then stated that he had previously gone over the matter with this witness, but that before he would make a formal claim of surprise he would request a recess to discuss the matter with Tobin. After the recess Tobin identified appellant as the man with whom he had robbed the hotel. He admitted that he had been afraid to testify that appellant was his accomplice because he was threatened by appellant. He had seen him in the county jail and again in the period between the time he was brought into court and the time when he first testified at the trial. When Tobin, after his arrest, had been first confronted by appellant he identified him as his accomplice. Tobin knew appellant by the name of "Joe Rice."

Inspector Bearden of the San Francisco Police, who arrested Tobin, testified that Tobin admitted having taken part in the Cartwright Hotel robbery and identified his accomplice as one Joe Rice. He described his appearance and clothing, and stated that he might be found at the Greyhound bus depot. Bearden went to the depot and located appellant who answered the description given by Tobin. When confronted by appellant, Tobin would say nothing, and appellant denied knowing Tobin.

Appellant testified that he arrived in San Francisco at 7 a. m., September 16, 1953, a time subsequent to the robbery. He said that he did not know John Tobin and had first met him when the officers had him in a car outside the Greyhound bus depot. He stated that he had never been to the Cartwright Hotel, had never seen the Buick automobile owned by the Morrison-Knudsen Company, and did not have the key to that auto in his possession, and that it had not been taken

from him as testified to by the police officer. He had left his brief case and the pass for the New York, New Haven and Hartford Railroad in the parlor of his hotel, he said, having discarded them, and could not explain how they had been placed in the stolen car.

Under cross-examination appellant admitted that he had been convicted of four prior felonies.

There is no merit in appellant's first contention that the evidence does not justify the verdict of the jury as to the two counts on which he was convicted. The above summary of the testimony demonstrates that the evidence was adequate and very convincing.

■ It is argued that the testimony of the accomplice was not corroborated. The testimony of the accomplice was corroborated by the positive identification of appellant by Joseph Peterson, the hotel clerk who was robbed, as well as by the fact that Joseph Peterson's driver's license was found in the stolen Buick together with other personal effects of appellant, and the key to the stolen car was found in appellant's possession.

Appellant claims that the district attorney was guilty of prejudicial misconduct in referring to appellant's past criminal record. ■ But since appellant took the stand in his own behalf his testimony was subject to impeachment by proof of prior conviction of a felony. (*People* v. *Williams*, 27 Cal.2d 220, 229 [163 P.2d 692]; *People* v. *Romer*, 218 Cal. 449, 452-453 [23 P.2d 749]; *People* v. *La Verne*, 212 Cal. 29, 32 [297 P. 561].)

Appellant apparently maintains error was committed in permitting the prosecution to show John Tobin's statements to the grand jury identifying appellant as his accomplice, for he quotes from *People* v. *Follette*, 74 Cal.App. 178 [240 P. 502], to the effect that where a witness called by the prosecution does not give adverse testimony but merely states that he does not remember, it is error to permit the prosecution to show previous statements before the grand jury. ■ Here, however, Tobin did not have a lapse of memory, but on first being examined at the trial denied that appellant was his accomplice, claiming that the accomplice was some other person. The district attorney could therefore examine him as to his previous statements on the ground of surprise. (27 Cal.Jur. 174-175, § 148.)

■ The fact that the testimony of this one witness is

contradictory is not ground for reversal. (*People* v. *Hightower*, 40 Cal.App.2d 102, 106 [104 P.2d 378].) Even if Tobin's testimony was not in the record at all, the verdicts are adequately supported by the testimony of Peterson, the police officers, and the circumstantial evidence.

Complaint is made that appellant was forced to stand in 18 line-ups, but he does not show how this prejudiced him. He was not identified as the accused in any of the alleged line-ups except on the one occasion when Peterson identified him as the Cartwright Hotel robber.

Appellant states that he could not have threatened Tobin the accomplice because white and colored prisoners were segregated in different parts of the jail. But the testimony of Tobin shows that he and appellant did have opportunities to meet.

■ There is no merit in the final contention that appellant was not given effective representation by the assistant public defender. A reading of the transcript shows that his rights were zealously safeguarded both by his counsel and the court. Witnesses against him were vigorously cross-examined, and all factors that might point toward his innocence were effectively presented in counsel's closing argument to the jury.

We conclude that there is no prejudicial error in the record and that the judgment of conviction is amply supported by the record.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied July 1, 1954, and appellant's petition for a hearing by the Supreme Court was denied July 14, 1954.