[Crim. No. 12470.   Second Dist., Div. Five.   Aug. 22, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. STEPHEN MESTAS, Defendant and Appellant.

Stephen Mestas, in pro. per., and Daniel L. Dintzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J. — By an information, defendant was charged with a violation of section 459 of the Penal Code (burglary). This was alleged to have occurred on or about November 17, 1965, in the Broadway Department Store. It was also alleged that defendant had suffered a prior conviction of the crime of assault with a deadly weapon, a felony, in Los Angeles County on July 31, 1959. Defendant was arraigned and pleaded not guilty. He denied the prior conviction. Trial was set for February 4, 1966. On defendant's motion, the case was advanced to January 14, 1966. At this time, defendant's motion to represent himself was denied and the public defender was appointed. The order denying defendant's motion to represent himself was vacated and the public defender was relieved on January 18, 1966. At this time, defendant's motion to represent himself in propria persona was granted.

Defendant's motion for use of the county jail law library was granted and his motion for perusal of the police report and other documents was granted. On defendant's motion, the trial was continued to March 21, 1966. Before trial, defendant moved for more use of the law library, for a legal runner, and for production of fingerprints by the Los Angeles Police Department. His motions were denied. However, defendant's motion for permission to inspect evidence to be used against him was granted, and he was allowed five telephone calls a day as well as law library privileges for six hours each day. Defendant was also allowed to interview defense witnesses under conditions prescribed by the sheriff's department. Also, a runner was appointed by the court for defendant.

Trial commenced on March 30, 1966. Out of the jury's presence, the court again offered defendant services of the public defender, but defendant refused that representation. Defendant was advised of his constitutional rights, and chose to appear in propria persona. The court made a finding that defendant was capable of representing himself. Defendant admitted the priors out of the presence of the jury.

The matter was tried before a jury on March 30, 1966, and a mistrial was declared upon defendant's motion for same. A new jury was impaneled and the case was again tried and argued and the jury instructed. Defendant's motion for a directed verdict of not guilty was denied. The jury returned verdicts finding the defendant "Guilty" and "Not Guilty." The jury then returned with a single verdict finding defendant guilty as charged. The court fixed the degree as second, and defendant's motion for law library privileges was granted.

Defendant's motion for a new trial was denied and probation was denied. Defendant was sentenced to the county jail for the term of nine months. Defendant filed a notice of appeal from the judgment.

### Facts

Eugene Hovelsen was a security officer at the Broadway Department Store, Fourth and Broadway, in downtown Los Angeles, on November 16, 1965. He arrived at work at 4:30 p.m., and the store closed for business at 6 p.m. on that date. After the store closed, Mr. Hovelsen proceeded to go through the store systematically from the first floor to the last floor, checking merchandise, locking the registers, shutting off lights, and setting alarms for the ADT. Everything was in good order and intact on his security check. On the second floor, the area known as University Shop was in good order, as was the fourth floor. All the doors and windows were locked and secured at the time of his check, which terminated at approximately 9:30 p.m. At this time, Mr. Hovelsen knew of one other employee in the building on the eighth floor working with computer machines.

At approximately 12:00, Mr. Hovelsen opened the door of the employee's entrance on the Fourth Street side of the street floor to let out the employee that had been working on the eighth floor. He then locked the Fourth Street door. At approximately three minutes after midnight, he heard a crash of glass at the Broadway side street floor and hurried in that direction. When he arrived in the approximate vicinity of the doors, he heard someone in the balcony above the street floor. He heard foot noises from someone walking and trying the doors. Mr. Hovelsen called up and asked who was there, and there was no reply. He heard a few more footsteps and then all was quiet.

Mr. Hovelsen then called the ADT alarm system and waited

for the police to arrive on the street floor. He noticed that at the Broadway door there was glass on the inside of the door and that on the outside there was a black, 5-gallon can.

At approximately 12:30 a.m. on November 17, 1965, Officer Mullin, a police officer for the City of Los Angeles, arrived at the Broadway Department Store and entered the store from the Broadway or east entrance. He observed that the glass was smashed out of the door and he entered through the broken glass. He went to the second floor by way of the stairway and went to the University Men's Shop. He observed defendant in the University Shop, rummaging through some young men's suits which were on a rack. He also observed on the floor directly behind defendant two pair of white ladies leatherette boots and a couple of sport shirts.

When Officer Mullin observed defendant, he placed him under arrest for burglary and informed him that he didn't have to make any statements unless he wished to, that he was entitled to the services of an attorney, and that any statements he might make could be used in a court. In regard to his rights, defendant said, ''[Obscenity] you, I know my rights.'' Officer Mullin asked defendant if there was anyone in the store with him, to which defendant replied, ''I thought you had already got my partner.''

They then took defendant out to the police car and although he was struggling in the handcuffs, he was able to walk unassisted. Officer Mullin did not smell any alcohol on defendant, and was of the opinion that defendant was not under the influence of alcohol.

The first two questions presented by the defendant are considered jointly: ''1. Should the jury be polled when two verdicts are given simultaneously in the trial, and should the judge clarify the reason for the two inconsistent verdicts and then admonish the jury accordingly before the jury is asked to redeliberate their verdict? 2. Should the court below have declared a mistrial when the two inconsistent verdicts were rendered?''

▌ There is no merit to these two contentions under the peculiar facts. It is inaccurate to speak of multiple verdicts in the circumstances present here. The colloquy at the time of the return of the inconsistent two verdict *forms* shows the two *forms* as returned were treated as but one verdict.[1] As such,

---

[1] ''[BY THE COURT]: Ladies and gentlemen of the jury have you been able to reach a verdict?
''THE FOREMAN: We have, your Honor.

the comment by the trial judge that ''[t]he verdicts are filled out improperly, ladies and gentlemen. We will have to give you new forms,'' and then out of the jury's presence, the court said to defendant and prosecutor, ''Mr. Mestas and Mr. Orr, the verdicts, the Court has two verdicts in from the jury finding guilty and not guilty. It is inconsistent,'' and so treated the documents as one verdict returned. Patently, the conflict then did exist, and the court properly exercised its discretion in a like manner as it would were the inconsistency

---

''THE COURT: Will you hand the verdict to the deputy sheriff?

''THE FOREMAN: I am sorry, your Honor, may I have it again?

''THE COURT: You want these verdicts back?

''THE FOREMAN: Yes, I didn't mark the verdict.

''THE COURT: The verdicts are filled out improperly, ladies and gentlemen. We will have to give you new forms.

'' (The jury leaves the courtroom.)

''THE COURT: Mr. Mestas and Mr. Orr, the verdicts, the Court has two verdicts in from the jury finding guilty and not guilty. It is inconsistent. Apparently there is some error. We will resubmit the verdicts again to them to make a decision one way or the other.

''Mr. Mestas——

''MR. MESTAS: Yes, your Honor.

''THE COURT: ——do you wish these destroyed or wish them as part of the record?

''MR. MESTAS: I want them as part of the record.

'' (The jury returns to the courtroom.)

''THE COURT: All right, the record again will indicate each member of the jury is present in court. The defendant is present in court, with counsel.

''Ladies and gentlemen, have you been able to reach a verdict at this time?

''THE FOREMAN: Yes, your Honor.

''THE COURT: Mr. Foreman, would you state your name for the record?

''MR. LONGSTRETH: Longstreth, James K.

''THE COURT: Will you please hand the verdict to the deputy sheriff?

''Read the verdict, please?

''THE CLERK: 'Title of Court and cause: We, the jury in the above-entitled action, find the defendant, Stephen Mestas, guilty of burglary, a felony, in violation of Section 459 of the Penal Code, as charged in the information.

'' 'This 31st day of March, 1966.

'' 'James K. Longstreth.'

''Ladies and gentlemen of the jury, is this your verdict? So say one, so say all?

''THE JURY: Yes.

''THE COURT: Please poll the jury, Mr. Clerk.

'' (Clerk polls the jury).

''THE COURT: Mr. Longstreth, you have submitted to the Court just previously to this two blank verdicts, one for guilty and one for not guilty and both were executed. Is there any reason for this?

''THE FOREMAN: Strictly an error on our part.

''THE COURT: Just clerical error in filling out the verdicts?

''THE FOREMAN: Correct.''

one under Penal Code section 1161[2] so a true verdict might be returned.

■ The defendant urges that the jury should have been polled on the return of two verdicts. It is manifest that the intent was to return one verdict and that by clerical error the two forms were submitted as that one verdict. (*People* v. *Camarillo* (1964) 225 Cal.App.2d 127, 134 [37 Cal.Rptr. 178].) Section 1163 of the Penal Code states: "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if anyone answer in the negative. the jury must be sent out for further deliberation." In the absence of request to poll the jury, and none was made here prior to their second return, failure of the court to poll the jury does not constitute denial of due process. (*People* v. *Lessard* (1962) 58 Cal.2d 447 [25 Cal. Rptr. 78, 375 P.2d 46].)

■ While it is the established custom in modern practice for the court to submit verdict forms to the jury, the oral declaration by the jurors unanimously endorsing a given result is the true "return of the verdict" prior to the recording thereof. Section 1149 of the Penal Code provides: "When the jury appear they must be asked by the court, or clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same." In *People* v. *Wiley* (1931) 111 Cal.App. 622, the court said at page 625 [295 P. 1075]: "The authenticity of the verdict is ascertained by requiring it to be orally declared in open court by the foreman. If demanded by either party, the verdict must be declared by each member of the jury as provided by section 1149 of the Penal Code. This is what is commonly termed polling the jury. In 16 C.J. 1100, section 2582 it is said: 'In the absence of statute requiring it, a written verdict need not be signed by the foreman of the jury, or by any of the jurors, although it is the usual and

---

[2]Penal Code § 1161: "When there is a verdict of conviction, in which it appears to the court that the jury have mistaken the law, the court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; but when there is a verdict of acquittal, the court cannot require the jury to reconsider it. If the jury render a verdict which is neither general nor special, the court may direct them to reconsider it, and it cannot be recorded until it is rendered in some form from which it can be clearly understood that the intent of the jury is either to render a general verdict or to find the facts specially and to leave the judgment to the court."

better practice for one of the jury, particularly the foreman, to sign it.' "

The foreman's request that the documents passed to the court be returned in that the verdict as submitted did not correctly represent the jury's verdict, provided adequate cause to return the jury to the jury room to authenticate their true verdict. The submission of new forms for such purpose by the court merely furthered the ultimate true return.

While it is true, as stated in *Kamanosuke Yuge* v. *United States*, 127 F.2d 683, 691, cert. den. 317 U.S. 648 [87 L.Ed. 522, 63 S.Ct. 43], "We do not go into detailed discussion of this assignment of error, for the reason that the law is clear that a verdict is not inconsistent that is consistent itself [Citations]," the single charge in the instant case (burglary) and the single return of a verdict (on two submitted forms) constituted patent inconsistency where the return showed both a finding of guilt and acquittal. The provision of section 1163 of the Penal Code requiring the court to return the jury for further deliberation was complied with, and it was not only unnecessary for the court to declare a mistrial at that time, but ill advised for it to do so for so long as the jury might properly return a true verdict, which it did.

Question three presented by the defendant is: "Was appellant in such a state of intoxication that he could not form the specific intent necessary to commit burglary?" The answer to this question was stated in the ultimate finding of guilt by the jury. The evidence was conflicting as to whether defendant was intoxicated or not. The jury obviously concluded he was not, and that finding, supported by sufficient evidence, is binding upon the court on appeal.

Question four presented by the defendant is: "Was the District Attorney in the trial below guilty of prejudicial misconduct?" Question five presented by the defendant is: "Did the judge in the trial below err when he refused to give jury instructions on the suppression of evidence engaged in by the District Attorney?" These two questions are considered jointly in that the basis of each is a contention certain evidence was suppressed. The claimed "suppressed evidence" was the police laboratory report on a fingerprint investigation on a can allegedly used to break the store door glass to facilitate entry to the store. The defendant claimed the can belonged to a third person. Whether some other person had handled the can could not benefit defendant here. The store had been broken into by someone, defendant was

taken into custody in the store and in the process of obtaining merchandise and it was at the hour of approximately 12:30 a.m. All the elements of burglary were present whether defendant broke the window or not. ■ In any event, the prosecutor has no duty to put in evidence all the evidence available in a case so long as that produced is fairly presented and defendant is accorded a fair trial. (*People* v. *Tuthill* (1947) 31 Cal.2d 92, 98 [187 P.2d 16].) Since there was no suppression of evidence by the district attorney, there could be no error in the court's refusal to instruct thereon. In addition thereto, the cases strongly suggest that the instruction requested should not be given in any event. (See *People* v. *Cuff* (1898) 122 Cal. 589, 591 [55 P. 407]; *People* v. *Chapin* (1956) 145 Cal.App.2d 740, 748-753 [303 P.2d 365]; *People* v. *Hightower* (1940) 40 Cal.App.2d 102, 108 [104 P.2d 378]; *People* v. *Woodward* (1934) 136 Cal.App. 149, 153 [28 P.2d 36]; *People* v. *Anderson* (1930) 106 Cal.App. 335, 338 [288 P. 1095].)

■ The final question raised by defendant is: "6. Did the judge in the trial below err [by] not informing appellant, in propria persona of his right to move to reopen or for a new trial on the basis of new evidence?" There is no contention that defendant was deprived of counsel; to the contrary, he refused such assistance when it was offered and adequately established his familiarity with the law and its processes to justify the trial court to acquiesce in his proceeding in propria persona. To complain now that the result in trial, or proceedings after trial were ineptly handled, is of no avail to the defendant who acts as his own counsel. This is but another example of the truth of the saying which needs no repeating here. The defendant demanded to act as his own counsel and was so permitted, and the trial judge was kind and helpful throughout the trial. *People* v. *Terry* (1964) 224 Cal.App.2d 415 at p. 418 [36 Cal.Rptr. 722] states: ■ "A defendant may waive counsel (*People* v. *Mattson, supra,* 51 Cal.2d 777 [336 P.2d 937]), and since a court usually cannot compel a mentally competent defendant to accept representation against his will (*id.,* pp. 788-789; *People* v. *Rose,* 42 Cal.App. 540, 553-554 [183 P. 874]) it follows that obdurate insistence by such a defendant must be recognized." To complain that further precautions and instructons were required to be taken or given by the trial judge under the circumstances of this case is to break the patience of justice itself. There is no merit whatever to this final wail of defendant.

The judgment is affirmed.

Kaus, P. J., and Hufstedler, J., concurred.

A petition for a rehearing was denied September 7, 1967, and appellant's petition for a hearing by the Supreme Court was denied October 19, 1967.