[Crim. No. 5549.   Second Dist., Div. Two.   Apr. 10, 1956.]

THE PEOPLE, Respondent, v. ROBERT DORSEY
SAYLES, Appellant.

Ellery E. Cuff, Public Defender, J. Stanley Brill and Noel B. Martin, Deputy Public Defenders, for Appellant.

Edmund G. Brown, Attorney General, and James L. Mamakos, Deputy Attorney General, for Respondent.

ASHBURN, J.—Appellant, convicted of possession of narcotics (Health & Saf. Code, § 11500), appeals upon the theory that the only evidence against him was obtained through an

unreasonable search and seizure. His counsel makes two points, (1) that a search without a warrant cannot be made where the police have had ample opportunity to procure a search warrant and have failed to do so, (2) that a lawful search cannot be made when section 844 Penal Code is violated—through forcible entry without "having demanded admittance and explained the purpose for which admittance is desired." Neither contention can be sustained.

Defendant did not testify. The evidence given by the police officers is without contradiction except in certain inconsequential particulars. The arrest and search occurred on April 15, 1955, at defendant's residence in Los Angeles. One of the arresting officers was Frank A. Mullens, who had known defendant for some time, having interrogated him two years before the instant arrest in the course of a narcotic investigation. At that time defendant said that he had been in jail for addiction and had just recently been released. The officer then observed that he had fresh needle marks on his arms, his eyes were definitely pin-pointed and not reacting to light, and he was under the influence of a narcotic. This information was relayed by Mullens to his fellow officers, Hill and Van Court, at the beginning of an investigation which led to defendant's arrest in April, 1955. This scrutiny of defendant's conduct started about the first of April. The officers had prior information that defendant was possessing and selling narcotics; they placed his home under surveillance at various times looking for entry or departure of users of narcotics; but they did not obtain information which they deemed adequate to support an arrest until the day it occurred. Early that morning a paid operator or informer advised Officer Hill that defendant was not only selling narcotics but then had some in his possession. Hill testified: "This particular operator that I have reference to now was a paid informant, and it was the operator's duty to find narcotic information and relay that information to us, and we in turn investigate it and see if there was anything that warrants further action or not." Hill gave him $5.00 and told him to make a preliminary purchase. In an hour or so the informant reported to Hill that he had bought one capsule at defendant's house and that defendant was holding narcotics in his pocket. He presented the capsule to Hill, who identified the contents as heroin, or some derivative and preserved the same as evidence. Hill, Mullens and Van Court soon met near defendant's home; Hill told them

of the operator's report and production of the capsule. Without obtaining a search warrant they then went to the house, Hill and Van Court to the front door and Mullens to the rear. Hill testified that the front door was open but the screen door was probably fastened; he saw a woman in the front room, said "Police officers," and entered forthwith. In doing so he pulled the eye of the fastener out of the door, thus effecting a forcible entry. He walked though the front room to the bedroom where defendant was standing near the bed, told him they were police officers and not to move. On top of a dresser next to the bed was a plastic bag containing a hypodermic outfit and syringe. Search of the person of defendant yielded from the pocket of the trousers he was wearing a rubber finger stall which contained 28 capsules, the contents of which were later identified by the police chemist as heroin and received in evidence. Further search of the house yielded nothing evidentiary. Defendant there made a full and voluntary confession of possession and use of the drug.

No claim is made that the information received from the particular informer could not be accepted by the officers as reliable (concerning which matter see *Willson* v. *Superior Court*, 46 Cal.2d 291, 294-295 [294 P.2d 36]).* The officers knew him, he was "an operator working for us." Given money for the purpose, he promptly made good upon his information, effected a purchase from defendant, reported that the sale was made at defendant's home and produced a capsule which Officer Hill identified as heroin. With the background of known addiction on defendant's part, previous information "that he was possibly selling narcotics," knowledge of the persistence of addiction which has once fastened upon a victim (defendant), the officers had reasonable ground to believe that defendant was then committing the crime of possession of narcotics, and the trial judge was justified in so finding.

When entering the house Officer Hill acted quickly in order to forestall destruction of evidence that he reasonably believed to be there. He testified: "At the time I was— my main purpose was getting in there and getting to this particular defendant before he could get to the bathroom and flush whatever evidence he had down the toilet, which

*The fact that the officers refused to disclose at the trial the identity of this informant is not made the basis of any argument by appellant's counsel.

is quite common. We meet that quite often. By the time we get to the defendants they are usually near a bathroom and they go to a bathroom and flush it down the toilet.'' He had a right to make a forcible entry for the purpose of an immediate arrest. (See *People · v. Maddox,* 46 Cal.2d 301, 303 [294 P.2d 6]; *People* v. *Martin,* 45 Cal.2d 755, 763 [290 P.2d 855].) This carried with it a right to search the person and premises of defendant.

█ The claim that failure to procure a search warrant, given reasonable time so to do, precluded a search as an incident to the arrest, was rejected by the Supreme Court in *People* v. *Winston,* 46 Cal.2d 151, 162-163 [293 P.2d 40]. The court there said: ''Defendant unavailingly argues that here the police officers had ample time to procure a search warrant and therefore such warrant was required in order to validate the search and seizure of the incriminating evidence at the time of his arrest. (*Trupiano* v. *United States,* 334 U.S. 699, 708 [68 S.Ct. 1229, 92 L.Ed. 1663].) In *United States* v. *Rabinowitz,* 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], it was held that a search of the defendant's premises incident to his lawful arrest at those premises was not unreasonable.'' In the cited case of *United States* v. *Rabinowitz,* 339 U.S. 56, 65-66 [70 S.Ct. 430, 94 L.Ed. 653], it was observed: ''It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that *Trupiano* v. *United States,* 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case.''

Section 844, Penal Code, provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired." Failure to comply with it does not make the search unlawful in circumstances such as those disclosed here. This was decided in *People* v. *Maddox, supra,* 46 Cal.2d 301, parts of which decision we now quote: "The question is thus presented whether or not evidence obtained by a search incident to an arrest must be excluded when the officer has reasonable cause to make the arrest and search but fails to comply with the requirements of section 844 [p. 304]. . . . Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844 [p. 306]. . . . Moreover, since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirements of section 844 to protect basic constitutional guarantees. (*Cf. People* v. *Boyles, supra,* 45 Cal.2d 652, 654 [290 P.2d 535]; *People* v. *Cahan, supra,* 44 Cal.2d 434, 442, footnote [282 P.2d 905].) We conclude therefore that when there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains." (Pp. 306-307.)

The judgment and the order denying a new trial are affirmed.

Moore, P. J., and Fox, J., concurred.