[Crim. No. 5617.   Second Dist., Div. One.   Oct. 23, 1956.]

THE PEOPLE, Respondent, v. CONRAD MENDOZA, Appellant.

Ernest Best, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

FOURT, J.—The defendant was charged in an information in the county of Santa Barbara with the crime of violation of section 11500 of the Health and Safety Code, a felony, in that he did, on or about, October 14, 1955, unlawfully possess heroin. It was further alleged that the defendant had suffered four prior convictions, namely, robbery in 1938, the Federal Narcotic Act in 1945, each under the name of Ray M. Teran, forgery in 1950, and a violation of section 11721 of the Health and Safety Code in Santa Barbara in 1955. A jury was waived and it was stipulated that the People's case be submitted on the transcript of the preliminary examination. The

defendant admitted the four prior convictions. The court found the defendant guilty as charged in the information and sentenced him to the state prison.

Defendant filed a notice of appeal from the judgment and "from the order denying Defendant's motion for new trial." No motion for a new trial was made and consequently no order denying a motion for a new trial was made, and any purported appeal therefrom should be dismissed.

A fair résumé of the facts is as herein set forth. At about 9:30 o'clock p. m., on October 14, 1955, Officer Thompson of the Police Department of Santa Barbara, with other peace officers, went to 117 West Canon Perdido Street in Santa Barbara, and on the second floor level of the house knocked on a door. The defendant Mendoza, whose voice was recognized by Thompson from a previous arrest having to do with narcotics, said "Who's there? Come in." Upon entering Thompson identified himself and found the room occupied by the defendant and one Sanford. Officer Thompson observed the defendant's eyes and noticed they were contracted and the pupils were almost pinpointed, and there was no reaction to light—he appeared to be in a stupor and had a glassy look. The officer saw a bowl on the dresser, and in it he found two empty capsules, a piece of wadded cotton and a small amount of liquid. The liquid was identified as containing heroin. Thompson was of the opinion that Mendoza was under the influence of a narcotic and placed Mendoza and Sanford under arrest for illegal use of narcotics and being under the influence of narcotics. A search of the room followed and nine capsules containing a whitish powder, identified as heroin, were found.

When the nine capsules of heroin were found the defendant was asked if that was all he had, and he replied, "Yes, that's all I have," and then he was asked if it was "pretty good junk?" and he replied, "It's supposed to be."

On cross-examination, Thompson testified that he had gained entrance to the house by going through the back door and the private apartment of the landlady and that they had secured her consent so to do. The officer also testified that the door into Mendoza's room was not locked and there was no force applied when they entered.

The officer further testified that prior to the arrest he had had an occasion to watch the house and see known narcotic users frequenting the place. On the day of the arrest he had the house under surveillance from about 2:50 o'clock p. m., and from a vantage point he could see the windows

of the front of the house, and further, that he knew and could see the windows of the room occupied by Mendoza; that he saw people walk into the room and saw the defendant arrive at the room with another man. The officer was able to identify the other man who stayed upstairs about 15 minutes and when he came out he was arrested and examined and found to be under the influence of narcotics. A second man was seen to go to the house, call up to the window, be acknowledged and admitted, and then stayed approximately 15 minutes. This man was arrested when he left and Officer Crawford testified that he was under the influence of narcotics.

Officer Thompson stated that after observing the establishment occupied by the defendant he entered with the intent of making an arrest for sale and possession of narcotics. Officer Crawford of the Santa Barbara Police Department testified that on October 14, 1955, he had observed people leaving the defendant's house under the influence of narcotics. He further stated that when he took Mendoza to the county hospital the next day at Mendoza's request, because he was then and there suffering from withdrawals, Mendoza told him he had a big habit of ''ten capsules a day.''

The defendant took the stand and testified, in substance, that the narcotics found in the room did not belong to him; that the door was forced open; that he had not injected himself with any heroin on the evening in question. He further stated that he had refused to submit to a doctor's examination on the night in question and that he did not recall seeing Officer Thompson before.

In substance, the defendant first contends that there was ample time within which the officers could have secured a search warrant, there being no emergency or element of surprise involved, and that therefore the search was illegal and the evidence illegally obtained and improperly admitted. Secondly, he contends that the permission obtained from the landlady to enter a part of the premises did not extend to that part of the house occupied by the defendant; and thirdly, that there was a conflict in the evidence as to whether Mendoza gave permission to enter his room, and that in any event the officer used a ruse to gain entrance and had the defendant known the knock or inquiry originated with police officers, he would not have said ''Come in,'' and further, that he did not intend to extend permission to other than friends and therefore his permission was not free and voluntary.

We are of the opinion that the contentions of the defendant are without merit.

In *People* v. *Kilvington*, 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73], the court said, with reference to what constitutes reasonable cause:

"There is a substantial agreement in the decisions of the courts as to what constitutes probable cause or reasonable cause such as will justify one in arresting or prosecuting another upon a criminal charge; and perhaps as clear and comprehensive a statement of the rule as can be found is that of Shaw, C.J., in *Bacon* v. *Towne*, 4 Cush. 217: 'There must be such a state of facts,' said he, 'as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty.'"

If that rule be applied to this case we believe it is evident that the officer had reasonable cause to believe that the defendant may have committed a felony. The defendant had been convicted in January of 1955 of a violation of section 11721 of the Health and Safety Code, and the officer knew of that conviction. The officer had the house under surveillance for a period of time and he determined during this period that persons who were known narcotic users were entering the house and the room of the defendant. Some of these persons were arrested as they left the place and were found to be under the influence of narcotics at the time. One man went up to the house, called up to the window, was acknowledged, went in and stayed approximately fifteen minutes. Upon his leaving he was arrested and found to be under the influence of narcotics.

Probable cause has been defined as a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true. (*People* v. *Brite*, 9 Cal.2d 666, 687 [72 P.2d 122].) Knowing what the officers knew and seeing what they saw, it is difficult to see how they could have believed anything other than that the defendant had committed a felony.

In the case of *People* v. *Maddox*, 46 Cal.2d 301, 304 [294 P.2d 6], the court said, in reference to the matter of observing known narcotic users:

"Moreover, in the present case Officer Taylor had defendant's home under surveillance for about a month and had observed known narcotics users frequenting it, and the information Davis gave him before the arrest was reasonable cause for the arrest."

Penal Code, section 836, provides in part as follows:

"A peace-officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person:

"1. For a public offense committed or attempted in his presence.

. . . . . . . . . . . . .

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it

. . . . . . . . . . . .

"5. At night, when there is reasonable cause to believe that he has committed a felony."

We believe that the officers in this case had good cause to proceed under either subdivision 3 or 5 above quoted.

It is the rule that officers may make calls on suspects and interview them when they have observed suspicious activities. (*People* v. *Michael*, 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Simon*, 45 Cal.2d 645, 650 [290 P.2d 531].)  When the officers were invited into the room they saw enough then and there to confirm their belief that a felony had been, and was being committed by the defendant Mendoza.

It was apparently obvious to the officer that the defendant was under the influence of narcotics, and as said in *People* v. *Jaurequi*, 142 Cal.App.2d 555, 560 [298 P.2d 896] :

"A narcotic addict is defined as a person who unlawfully uses or is addicted to the unlawful use of narcotics (Health & Saf. Code, § 11009.)  Any person convicted of being an addict is guilty of a misdemeanor.  It would appear that, under the code, addiction is a chronic rather than an ordinary acute offense, and one may be guilty of being a 'drug addict' at any time and place he is found so long as the character remains unchanged, although then and there innocent of any act demonstrating his character."

As to the contention that the officers had ample time and should have secured a search warrant, a complete answer is set forth in the case of *People* v. *Sayles*, 140 Cal.App.2d 657, 659-660 [295 P.2d 579] :

"When entering the house Officer Hill acted quickly in order to forestall destruction of evidence that he reasonably believed to be there.  He testified: 'At the time I was—— my main purpose was getting in there and getting to this particular defendant before he could get to the bathroom

and flush whatever evidence he had down the toilet, which is quite common. We meet that quite often. By the time we get to the defendants they are usually near a bathroom and they go to a bathroom and flush it down the toilet.' He had a right to make a forcible entry for the purpose of an immediate arrest. (See *People* v. *Maddox*, 46 Cal.2d 301, 303 [294 P.2d 6] ; *People* v. *Martin*, 45 Cal.2d 755, 763 [290 P.2d 855].) This carried with it a right to search the person and premises of defendant.

"The claim that failure to procure a search warrant, given reasonable time so to do, precluded a search as an incident to the arrest, was rejected by the Supreme Court in *People* v. *Winston*, 46 Cal.2d 151, 162-163 [293 P.2d 40]. The court there said : 'Defendant unavailingly argues that here the police officers had ample time to procure a search warrant and therefore such warrant was required in order to validate the search and seizure of the incriminating evidence at the time of his arrest. (*Trupiano* v. *United States*, 334 U.S. 699, 708 [68 S.Ct. 1229, 92 L.Ed. 1663].) In *United States* v. *Rabinowitz*, 339 U.S. 56 [70 S.Ct. 430, 94 L.Ed. 653], it was held that a search of the defendant's premises incident to his lawful arrest at those premises was not unreasonable.' In the cited case of *United States* v. *Rabinowitz*, 339 U.S. 56, 65-66 [70 S.Ct. 430, 94 L.Ed. 653], it was observed: 'It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required. To the extent that *Trupiano* v. *United States*, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant. but whether the search was reasonable. That criterion in turn

depends upon the facts and circumstances—the total atmosphere of the case.' "

There is no merit in the contention that the consent of the landlady to enter a part of the house did not give the officer a right to go upstairs to the defendant's room. The defendant told the officers, "Come in," and the officers did so. The officers thereupon had the consent to enter the house and they were invited into the defendant's room. (See *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469]; *People* v. *Caritativo*, 46 Cal.2d 68 [292 P.2d 513].)

On the record before us we have concluded that the officers' testimony constituted sufficient evidence that the entry into the room was made with the consent of the defendant—having lawfully entered and seeing what they saw, the officers were perfectly proper in making the arrest and the search. The evidence was, therefore, properly received.

The judgment is affirmed and the purported appeal from the "order" denying a motion for a new trial is dismissed.

White, P. J., and Doran, J., concurred.