[Crim. No. 2919. Third Dist. Apr. 13, 1959.]

THE PEOPLE, Respondent, v. RAYMOND ADAME, Appellant.

A. Richard Backus, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Robert K. Puglia, Deputy Attorneys General, for Respondent.

VAN DYKE, P. J.—In an information filed on February 25, 1958, the appellant, Raymond Adame, was accused of the crime of possessing marijuana (two counts), in violation of section 11500 of the Health and Safety Code, alleged to have been committed on the 22d day of January, 1958. Count Three of the information charged sale of marijuana on the same date. Appellant was also charged with a prior conviction of possession of marijuana and with having served a term in a California state prison therefor. On February 23, 1958, counsel was appointed for him by the court. His case was consolidated for trial with the cases of the defendants, Armando Garcia, Richard Lee Ingle, and Ingle's wife, Sondra. Appellant was arraigned on March 7, 1958. His counsel moved for a continuance of one week, requesting that other counsel be appointed. The motion was denied. Appellant

entered a plea of not guilty to all three counts and denied his prior conviction. The cause came to trial on May 22d, at which time it was ordered that counsel be relieved of his appointment, as appellant desired to proceed in propria persona.

Since one of the contentions of appellant is that the judgment should be reversed because of a violation of his constitutional rights to representation by counsel, we will first consider this assignment. On February 23d, two days before the filing of the information, Mr. Barcroft, an experienced member of the bar, who had once been a district attorney, was appointed to represent appellant and his codefendant Ingle. It appears that there had been some dissatisfaction on the part of appellant and Ingle with Mr. Barcroft's representation, and five days before the trial was to begin they had told him that they did not want him to try their case. This impelled him, at the opening of the trial, to bring the matter before the court and the following occurred:

"MR. BARCROFT: If the Court please, there is a preliminary matter that should be taken up at this time. Last Saturday I visited with the Defendants Raymond Adame and Richard Lee Ingle with a view to discussing trial preparation, and they then and there informed me definitely that they no longer wanted me connected with their defense and that, alternatively, rather than have my continued representation, they would defend themselves. At this time, in order that they may take over their own defense, as they have indicated to be their desire, I ask the Court to relieve me from any responsibility which I may have incurred by virtue of having been assigned to their defense.

". . . . . . . . . . . . . .

"THE COURT: All right, gentlemen, you have heard the statement of Mr. Barcroft. What have you to say?

"DEFENDANT ADAME: Your Honor, the reason we are going to act as our own attorneys is because of being held in the County Jail for a period of four months. We have attempted to have another attorney prior to this time—we tried—we told the court we wanted another attorney, because Mr. Barcroft felt he couldn't handle our case and it would prejudice him by asking us to go on with the Court and asking us to plead guilty to the charge. So, at this time, I would like to go ahead with the trial if you would appoint us an advisor.

"THE COURT: I am in no position to provide you with an advisor at this late date. This Court has previously appointed

Mr. Barcroft to represent you. I have known Mr. Barcroft for twenty-five years. I know him as an able, conscientious, well-informed attorney, possessed of more than average, or more than ordinary ability. I know of no man who could defend you any better than Mr. Barcroft. This is not a case where the Court has appointed an inexperienced young lawyer just out of school. Rather, the Court, I think, has used excellent judgment to protect the rights of a Defendant in appointing Mr. Barcroft to represent you. Now, you have the right to represent yourselves if you desire. You have a right to counsel at all stages of the proceedings if you haven't sufficient funds with which to employ counsel. You have made that statement, apparently, at the time of your arraignment, that you hadn't sufficient money, and the Court then, in compliance with your request and in accordance with the rules, to afford you all the rights granted you under the Constitution, appointed Mr. Barcroft. Now, if you are dissatisfied with Mr. Barcroft and this case is ready for trial and you want to try this case yourselves, that is perfectly all right with me. But, if that situation should develop, I am not going to act as your attorney. If you elect to represent yourselves, you will be bound by the same rules of conduct we expect and demand from every attorney. You must be familiar with the rules of evidence, and if the questions you ask are improper or improperly asked, they will not be permitted to be answered. Now, whatever you want to do is entirely up to yourselves. There is an old, old saying that 'he who acts as his own attorney has a fool for a client,' and while it is an old saying, I think it is a true saying. Now, if you fellows, both of you, feel that this is a simple matter and that you are well equipped to try your own cases without any legal background, that is a decision you are going to have to make.

"DEFENDANT RICHARD INGLE: Your Honor, we knew Mr. Barcroft was not going to handle the case and we requested the District Attorney's office if they would possibly let us look at some of the law books and become familiar with some of the things we should know in this type of trial. We know it's a very serious charge, and with Mr. Barcroft handling the case we did not feel our story would come out the true way.

"THE COURT: Mr. Barcroft, the statement has been made by these Defendants that you desire to withdraw from this case. Did you make application to withdraw from this case prior to your statement to the Court here?

"MR. BARCROFT: No, Your Honor, I have never made any

application to withdraw following my assignment. At the time I was assigned, I suggested that the Defendants would probably feel better satisfied if other counsel were assigned, but Judge Sischo at that time said it was up to me to accept this appointment, which I have done.

"THE COURT: I appreciate you have.

"MR. BARCROFT: I have never endeavored to withdraw since, and I was ready to represent the Defendants to the best of my ability up to last Saturday. Since that time, of course, it is evident that any further relationship between us is going to be distasteful to all of us.

"THE COURT: I appreciate the position you are in, but by the same token, in a Courtroom full of prospective Jurors,— I am down here on an assignment myself— I am not going to continue this matter. At the time I set this case for trial when I was here, I believe it was in April, possibly it was in March— we set the date in your presence and in the presence of Mr. Chandler. [Mr. Chandler was counsel for Mrs. Ingle.] No objection was made at that time, either to counsel or to the selection of the date. You were ready to proceed. Now, you can either have Mr. Barcroft, or you can represent yourselves. You make the decision, and you make it in the light of what I told you as to the conduct of this case, Now, make up your mind what you want to do. Do you want Mr. Barcroft to represent you? If so, I will still keep him in the case. If you don't want him, I want it in the record that you have refused counsel in the case and desire to handle the matter yourselves.

"DEFENDANT RICHARD INGLE: Your Honor, we feel we will go ahead and act as our own attorneys.

"THE COURT: Have you considered what I stated to you about the conduct of this trial and the manner in which it is going to proceed?

"DEFENDANT RICHARD INGLE: Yes, sir.

"THE COURT: You fully understand and know what you are doing?

"DEFENDANT RICHARD INGLE: Yes, sir.

"THE COURT: How about you, sir?

"DEFENDANT ADAME: Yes.

"THE COURT: You desire to proceed by yourself, and represent yourself?

"DEFENDANT ADAME: Yes.

"THE COURT: You fully understood what I stated as to how this trial was going to be conducted?

"Defendant Adame: Yes, sir.

"The Court: Knowing that, you feel competent to represent yourself?

"Defendant Adame: Not competent, but we will go ahead.

"The Court: You don't want Mr. Barcroft to represent you?

"Defendant Adame: I did not say Mr. Barcroft— as I said before, he previously wanted to get out of the trial.

"The Court: Mr. Barcroft has denied that statement that he wanted to get out of the trial. The question I am going to ask you is plain and very simple. Do you want Mr. Barcroft to represent you in the trial? Answer that 'Yes' or 'No.'

"Defendant Adame: No.

"The Court: All right, Mr. Barcroft, you are relieved of further duty in the representation of these Defendants."

There is no merit in the charge that appellant was denied the aid of counsel. This action was not hurried to trial. Three months elapsed between the appointment of Mr. Barcroft and the time when a few days before the trial he was informed by appellant and his codefendant, Ingle, that they did not want him to try the case for them. It is evident from what occurred that the decision to discharge Mr. Barcroft was a decision jointly arrived at by appellant and Ingle and while they made a half-hearted attempt to lay some blame upon the district attorney because he did not accede to a request of theirs to use a law library it clearly appears that, foolish though it may have been and probably was, the decision to discharge Mr. Barcroft was their own. Appellant did not ask for a continuance, although this may have been in part because the court had stated that it would not grant one. Under the circumstances, the court was justified in stating it would not continue the case. The fact remains that no continuance was asked and we cannot assume that appellant desired one. Both he and Ingle stated to the court that they were ready to go ahead. It appears the trial court was meticulously careful to warn them as to the danger of the course they were taking, even stating to them the old familiar saying that an accused acting as his own attorney has a fool for a client. The net result of this attempt of the court to clearly point out to appellant that the course he was taking was a dangerous one produced nothing more than an argument on this appeal that the court was guilty of misconduct for having called appellant a fool, thus prejudicing him in the minds of the jury, a charge which borders upon the

ridiculous. There is no merit in the contention now under discussion. Appellant literally kicked competent counsel out of his case and if he suffered for that the fault is entirely his own.

■ Appellant challenges the sufficiency of the evidence to sustain the verdict on the count charging him with sale. To discuss this assignment and others made we will now state the testimony, adhering to the rule that it must be stated favorably to the prosecution insofar as conflicts therein and conflicting inferences that may be drawn therefrom are concerned.

On January 2 and January 15, 1958, Richard Gary Nicholson, an agent of the State Bureau of Narcotic Enforcement, made purchases of marijuana cigarettes from one Garcia. On each occasion Nicholson met Garcia at the latter's house in Madera, California, and gave him money for marijuana cigarettes. Garcia, on each occasion, left his house by himself, returning in 15 to 20 minutes with the cigarettes which he then gave to Nicholson. On at least one of these occasions when Garcia was gone for 15 to 20 minutes he departed in his automobile, a 1948 dark maroon Chevrolet club coupé. On January 17, 1958, Nicholson again met Garcia at the latter's house and gave him $20. Garcia left the house and returned about 15 minutes later with 10 marijuana cigarettes, nine of which he gave to Nicholson. Several minutes later he again left, returning about 20 minutes later with 10 more cigarettes, nine of which he gave to Nicholson. On that same evening, Gary Shoemaker, an inspector for the State Bureau of Narcotic Enforcement was parked near the appellant's home in Madera. At about 7:30 p. m. he observed a 1948 maroon Chevrolet pull into appellant's driveway. The driver honked twice and someone came out of the house, approached the driver's side of the car and apparently engaged the driver in conversation. Shoemaker saw the Chevrolet leave and go back to Madera. A short time later that evening, Shoemaker again observed the same maroon Chevrolet pull into appellant's driveway. On January 22, 1958, Nicholson saw Garcia at the latter's house and gave him $20. The bills were in denominations of two $5.00 bills and ten $1.00 bills. The money had been given to Nicholson by Shoemaker, who had made a list of the serial numbers on the bills and had marked each bill with green fluorescent crayon and orange fluorescent powder. Garcia received the money from Nicholson at about 7 p. m.

and departed. He was gone until approximately 8:10 p. m. At about 7:15 p. m. Shoemaker, who was again parked near appellant's house, observed Garcia's car pull into appellant's driveway, saw a person leave appellant's house and approach Garcia's car on the driver's side. After a short delay the car returned to Madera. When Garcia returned home at approximately 8:10. p. m., he gave Nicholson 36 marijuana cigarettes and was arrested immediately thereafter. In most of the purchases made by Nicholson from Garcia the latter obtained the cigarettes elsewhere and kept one or two for himself, giving the remainder to Nicholson. He explained to Nicholson that the person from whom he got the cigarettes always gave him a commission; that he would take a commission from Nicholson's purchase also. Officer Daulton of the Madera Police Department participated in the arrest of Garcia. At the time of his arrest Garcia was not in his automobile nor was his automobile at his home. Daulton, accompanied by Officer Jones, went in search of Garcia's automobile and they found it about one-half block from Garcia's house. In the automobile were appellant and Richard Ingle. Officer Daulton had knowledge that the appellant was a known peddler or user of marijuana. Appellant and Ingle were ordered out of the car by the officers, placed under arrest and searched. The search of appellant produced 12 marijuana cigarettes which were taken from his person. A partly-smoked marijuana cigarette and a coin purse with several one dollar bills in it were also found on appellant. The search of Ingle's person produced $20 in denominations of two $5.00 bills and ten $1.00 bills. These were identified as the same bills from which Inspector Shoemaker had recorded the serial numbers and which had been marked with green fluorescent crayon and orange fluorescent powder. Appellant and defendant Ingle were checked under an ultraviolet light immediately after arrest and both were found to have orange fluorescent powder on their hands. Appellant had orange fluorescent powder on the thumb and index finger of each hand and the inside of his coin purse contained orange fluorescent powder. One of the dollar bills found in the appellant's coin purse was found to have green fluorescent powder on it. This bill, however, apparently belonged to appellant and was returned to him and not introduced in evidence. After appellant's arrest he admitted to Inspector Shoemaker that the marijuana cigarettes found in the search of his person belonged to him. At about 8:15 p. m., January

22, 1958, immediately following appellant's arrest, his home was searched by police officers pursuant to a search warrant for the premises. In the course of the search 20 marijuana cigarettes were found in a dresser drawer in the house. Appellant admitted to Inspector Shoemaker that the cigarettes found in the search of his home belonged to him. A certified copy of the abstract of judgment entered in the Superior Court of the State of California in and for the County of Madera was introduced into evidence and showed that appellant had been convicted on August 6, 1954, by a plea of guilty to the crime of possessing marijuana in violation of section 11500 of the Health and Safety Code. Certified copies of prison records introduced in evidence showed that appellant had been received at San Quentin Prison on August 11, 1954, under commitment for the above offense; that on January 12, 1956, his term was fixed at four years; and that on February 4, 1957, he was released on parole. At the trial appellant did not testify nor did he adduce any evidence in his behalf to explain or deny the prosecution's evidence against him. Following a brief opening statement, he rested his case. To complete the picture it ought to be stated that Ingle, upon a search of his home, was found to have been in possession of enough marijuana to make about 250 cigarettes and in possession of the type of paper used to roll them.

We think the evidence sufficient to support the finding that appellant sold the cigarettes to Garcia. Before the last two sales were made to Garcia on January 22d, a familiar pattern of operation began to appear. The inspector would give money to Garcia with which he was to obtain marijuana cigarettes. Garcia's car, although not tailed, would, nevertheless, quickly appear at appellant's residence where it was seen by a spotter. Shortly thereafter, Garcia would return and hand the cigarettes to the inspector. On January 22d, the day of the sale for which appellant was being prosecuted, his car was again seen at appellant's home and shortly after Garcia's arrest was found by the officers close to Garcia's home with appellant and Ingle sitting in it, Ingle being in possession of the marked money.

We think the jury from the entire picture could draw the conclusion that Garcia was obtaining his supply from appellant and that either appellant obtained his supply from Ingle and his wife, Sondra, or that the supply was one being operated in common by Ingle, his wife, and appellant. The supply found on hand in the home of appellant was large enough to

warrant an inference that he was, through Garcia and in common with the Ingles, engaged in sales. The large supply found in the home of the Ingles adds significance to the whole picture. The evidence was fully as strong as that held sufficient in *People* v. *Lee,* 9 Cal.App.2d 99 [48 P.2d 1003], and in *Sauvain* v. *United States,* 31 F.2d 732, referred to in *People* v. *Lee.*

Appellant next contends that the court erred in receiving in evidence People's Exhibits Numbers 6, 7 and 8, which were the cigarettes taken from the person of appellant when he was arrested, a partly smoked cigarette found in his watch pocket, and a small coin purse taken from appellant at the time of his arrest, which had in it a dollar bill with powder on it. Appellant contends that these three exhibits were erroneously admitted in evidence because, as he asserts, they were obtained in violation of his constitutional rights against unreasonable searches and seizures and were admitted without a sufficient foundation having been laid to establish the legality of appellant's arrest and search.

A peace officer may make an arrest without a warrant when he has reasonable cause to believe that the person to be arrested has committed a felony whether or not a felony has in fact been committed. (Pen. Code, § 836.) Reasonable cause has been defined as such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest suspicion that the person in question is guilty of a crime. (*People* v. *Gusukuna,* 152 Cal.App.2d 135 [312 P.2d 714].) If an arrest without a warrant is based on reasonable cause and is, therefore, lawful, a search and seizure incident thereto would also be legal because based on reasonable cause. (*People* v. *Brown,* 45 Cal.2d 640 [290 P.2d 528].) We think the officers had reasonable cause to believe in the guilt of appellant when they arrested him and that they made a lawful search and seizure as an incident thereto which turned up the exhibits admitted into evidence. It follows that the court did not err in admitting those exhibits.

Whether or not reasonable cause exists in a particular case must be decided on the facts and circumstances of that case. Officers Jones and Daulton of the Madera Police Department arrested appellant on the evening of January 22, 1958, at about 8:15 p. m. Both officers had participated in the arrest of Garcia for an illegal sale of marijuana just prior to appellant's arrest. Officer Daulton testified that when Garcia was arrested he was not in his car, nor was the car at

his house. This fact prompted the officers to search the area for the automobile. When it was located about one-half block from Garcia's home, the appellant and defendant Richard Ingle were seated in it. Daulton testified that he had knowledge that the appellant was a known peddler or user of marijuana. The court had enough before it to justify the ruling that the arrest, and the incidental search and seizure were lawful.

Appellant contends that the trial court prejudicially erred in allowing respondent's witness, Officer Daulton, to testify in the jury's presence and over objection that he had knowledge that appellant was a known peddler or user of marijuana. Appellant, acting as his own counsel, took no objection to the testimony. Objection was taken by his co-defendant, Ingle, likewise acting as his own attorney. One party cannot take advantage on appeal for the first time of objections raised only by a codefendant or his counsel where the record does not show any stipulation or understanding that one defendant should have the benefit of objections made by the other. (*People* v. *Duran,* 57 Cal.App.2d 363 [134 P.2d 305].) Furthermore, the objection made by Ingle was that the officer was testifying to hearsay. But the officer testified that he had knowledge that appellant was a known user or peddler. That was not necessarily hearsay nor was it given as such and the trial court pointed out this situation to Ingle on overruling his objection.

Appellant next contends that the court erred in instructing the jury that the prosecution was not required to call all persons shown to be present or to have knowledge of matters on trial. He contends also that the trial court erred in failing to instruct the jury pursuant to section 2061, subdivisions 6 and 7, Code of Civil Procedure, that evidence is to be estimated not only by its intrinsic weight but also according to the evidence which it is in the power of one side to produce and of the other to contradict and, therefore, that if weaker and less satisfactory evidence is offered when it appears that stronger and more satisfactory was within the power of the party, the evidence offered should be viewed with distrust. As to the first of these two assignments the instruction given has been approved as a proper one to be given in criminal cases. (*People* v. *Reingold,* 87 Cal.App.2d 382, 408 [197 P.2d 175].) As to the second assignment it has been held that such an instruction may be given by the court to

the jury on all proper occasions, but that in criminal cases the proper occasions are so few and the improper occasions are so many that it would be better if the instruction were given rarely, if at all. (*People* v. *Cuff*, 122 Cal. 589 [55 P. 407]; *People* v. *Trinidad*, 198 Cal. 728 [247 P. 907]; *People* v. *Carroll*, 20 Cal.App. 41 [128 P. 4].) This case illustrates how the instruction can be a two-edged sword, for appellant himself did not take the stand, although he certainly must have had knowledge of matters in issue. Had the court given the instruction, the probability is that the industry and learning of his appointed attorney on appeal would have brought up an argument that the giving of the instruction was error and cause for reversal since it pointed so clearly to the failure of appellant to take the stand. (See *People* v. *Cuff*, *supra*; *People* v. *Trinidad*, *supra*; *People* v. *Carroll*, *supra*.)

Appellant next contends that the trial court erred in ruling that respondent could argue to the jury matters which had been excluded from evidence and not admitted at the trial. This refers to the argument made by the prosecuting attorney with respect to there having been proved a common plan of appellant and Ingle to sell marijuana, using Garcia as an agent. The court had excluded from evidence certain marijuana cigarettes sold on January 2d, 15th and 17th, preceding the sales of the 22d upon which the prosecutions were based. When this ruling was made, the court made it clear that it applied only to the physical evidence involved and did not preclude the prosecuting attorney from arguing to the jury the effect and value of the plan and design. (Appellant did not object to the admission of evidence of plan and design.) In his argument to the jury the prosecuting attorney referred to the testimony concerning the sales on January 2d, 15th and 17th, and argued that it was evidence of a common plan to sell marijuana. No objection was made to the argument, nor was any request made that the court admonish the jury to disregard it. Under such circumstances the point is not good on appeal. (*People* v. *Codina*, 30 Cal. 2d 356 [181 P.2d 881]; *People* v. *Sykes*, 44 Cal.2d 166 [280 P.2d 769].) Since the point has not been preserved for appeal, it is needless to say more.

Finally, appellant assigns a group of errors and says that the cumulative effect thereof, coupled with other claims of error heretofore discussed, resulted on the whole in the denial to appellant of a fair trial. The first of the group is the refusal of the court to appoint advisory counsel for appellant,

after relieving Mr. Barcroft, and the court's denial, as appellant puts it, of a continuance to enable him to seek other counsel. We have already discussed the matter of relieving Mr. Barcroft and have noted that no request for a continuance was in fact made. We know of no obligation resting on a court to appoint advisory counsel. Next, appellant challenges the court's conduct in discussion concerning the relief of appellant's court-appointed counsel and the undertaking of appellant's defense in propria persona in the presence and presumably in the hearing of the prospective jurors gathered in the court room. Specifically, the assignment refers to the trial court's language, implying, as appellant asserts the fact to be, that he was a "fool" to conduct his own defense. We have already discussed this point also. The last of the group refers to a statement made by the court that a police officer making an arrest does not have to state the reason for the arrest. This incident arose during Ingle's cross-examination of one of the arresting officers: "Q. How was I placed under arrest? Do you remember? A. We told you you were under arrest. Q. Did you state for what we were under arrest? A. I don't recall whether we did or not. Q. You don't have to, is that right? You don't have to tell the individual what he is under arrest for, is that right? .... THE COURT: He does not have to. He places you under arrest, and that is it. I don't think you have to give any reason for it. If it is asked, you tell them. I think he just pats a person on the shoulder at such time, without saying a word, and that would constitute an arrest." It may be said that the court erred at this point since section 841 of the Penal Code states in part:

"The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, ...."

At the moment Ingle and appellant were arrested the sale had been made, Garcia had departed with the narcotics purchased by him and appellant and Ingle were seated in Garcia's car with the money received, as hereinbefore related. We think no prejudice was suffered by the appellant.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied May 4, 1959.