[Crim. No. 7226.   Second Dist., Div. One.   Apr. 10, 1961.]

THE PEOPLE, Respondent, v. ARTHUR L. BROWN, Appellant.

Minsky, Garber & Rudolf and Albert C. Garber for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment wherein the appellant was found guilty as charged of possessing heroin.

In an information filed in Los Angeles County on August 31, 1959, appellant was charged with having possession of heroin on August 19, 1959, in violation of section 11500, Health and Safety Code. Appellant pleaded not guilty and a jury trial was properly waived. During the course of the

trial appellant moved to suppress the evidence and testified in his own behalf with reference to that motion. The motion was denied. Appellant was found guilty, proceedings were suspended and appellant placed on probation for three years, a part of the terms being that he spend a short time in the county jail.

A résumé of the facts is as follows:

William Caskey, a member of the police department (narcotics division) arrested the appellant at 3820 West Twenty-Seventh Street on August 19, 1959. The officer's investigation started in the first instance in response to some information which he had received prior to July 7, 1959. Caskey and his brother officers knew a woman known as "Gay Baby," who had furnished the original information about appellant. She was colored and had been known by Caskey for a considerable period of time. Caskey had made some arrests as a result of information "Gay Baby" had provided, though he had not particularly relied upon her in the past.

The information with reference to the appellant was that he was selling heroin to numerous users and that he was in possession of and drove an old model, dirty, gray Chevrolet automobile, from which the trunk lid was removed. Caskey had information to the effect that appellant lived in and managed an apartment house at 1020 South New Hampshire Street.

Caskey and other officers went to the last named address one evening in July. A woman at that establishment stated that she was the new manager and had assumed her duties that day. She also stated that Arthur L. Brown was previously the manager and that he had left the day before. The officers were shown to the apartment in which Brown formerly lived and presumably the officers searched the rooms. The manager told the officers that the owner of the apartments had called her and asked her to take over the place because he, the owner, was dissatisfied with Brown's activities; that there were so many people running in and out at all times of the day and night, and that the owner wanted Brown to leave. The new manager assumed that the coming and going of so many people under the circumstances was the reason for Brown's leaving.

The manager directed the officers to another apartment in the building where a young couple resided. Their name was Burke or Burton, and they were called Joan and Jerry, or Gerald. This couple stated that they knew Brown, and Jerry

stated that it was his understanding that Brown was selling narcotics. Caskey questioned the young man Jerry about his business and found that he was an unemployed musician who had been an occasional user of narcotics. The officer found what appeared to be hypodermic marks upon his arm. Caskey had never seen the couple before nor had he ever relied in the past on anything which they might have said.

Thereafter information was received by Caskey (or the officers) with reference to where appellant might be living. About August 18, 1959, the officers saw a car parked at an apartment on West Twenty-Seventh Street. The car answered the description of appellant's car. The arrest took place the next day outside of the apartment building.

At about 9 a.m. Caskey arrived at the apartment house where Brown supposedly lived and inquiry was made as to whether Brown resided there. Caskey was told that an Arthur L. Brown did live in that apartment house. The officers thereupon located themselves near the apartment in which Brown was supposed to be living and waited for him to come out. Caskey finally saw the appellant come into view from the apartment and he approached the area where Caskey was located. Caskey walked up to the appellant, showed him his credentials and asked, "What is your name?" and appellant answered, "My name is Arthur Brown." Officer Northrup in the meantime had come upon the scene of activity. Caskey, as he approached the appellant, noticed a bulge in the front pants' pocket of appellant which was about the size and shape of a small box which would contain number 5 gelatin capsules. The officer asked appellant, "Do you have any narcotics on you?" and appellant answered, "Yes, I do." Caskey then told appellant that he was under arrest and took from his pants' pocket a box which contained heroin and some empty capsules. Caskey asked appellant if he had any more narcotics in the apartment and appellant said, "No, that is all I have." Appellant in answer to questions stated that he had about five or six grams with him but that that was all that he did have.

The arrest took place in a parking lot of the apartment house about noontime; later Caskey found a rent receipt dated July 5 for $99.50 for rent paid by Brown at 3820 West Twenty-Seventh Street, for the period from July 5 to August 4, 1959. All of the items were properly booked. An expert gave his opinion that the powder in the box taken from Brown's pants' pocket was heroin.

Appellant now contends that the court erred in denying his motion to suppress the evidence which he asserts resulted from an illegal search and that the judge erred in not striking the arresting officer's testimony with respect to the conversation with incompletely identified informants.

In effect appellant argues that the officer did not have probable cause to make his arrest. ▮ Probable cause has been defined in general as being such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest, strong suspicion that the person in question is guilty of a crime. (Citing *People* v. *Adame*, 169 Cal.App. 2d 587, 598 [337 P.2d 477]; *People* v. *Carnes*, 173 Cal.App.2d 559, 565 [343 P.2d 626]; *People* v. *Jaurequi*, 142 Cal.App.2d 555, 559 [298 P.2d 896].)

▮ We must look to the facts which the officer had at the time in question. (*People* v. *Cantley*, 163 Cal.App.2d 762, 765 [329 P.2d 993]; *People* v. *Adame*, *supra*.) ▮ Information received from others which might not in and of itself be sufficient to establish reasonable or probable cause may nevertheless be relevant when used with other evidence. (*People* v. *Prewitt*, 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36].) ▮ The officer was entitled to take into consideration the admission of appellant to the effect that he then and there had heroin in his possession in making the determination of the existence of probable cause for the arrest. (*People* v. *Rios*, 46 Cal.2d 297, 298 [294 P.2d 39]; *People* v. *Smith*, 141 Cal.App.2d 399, 403 [296 P.2d 913].)

If Caskey had not arrested the appellant after being told by the appellant that he, the appellant, did then and there possess narcotics, surely Caskey would have been derelict in his duty and subject to a severe reprimand.

The credibility of the witnesses was for the trial judge to determine under the circumstances of this case. (*People* v. *Muniz*, 172 Cal.App.2d 688, 691 [342 P.2d 53]; *Lorenzen* v. *Superior Court*, 150 Cal.App.2d 506, 510 [310 P.2d 180]; and *People* v. *Dewson*, 150 Cal.App.2d 119 [310 P.2d 162].)

▮ The arrest was made upon probable cause and it follows that under the circumstances the search and seizure was lawful. (*People* v. *Adame*, *supra*, 169 Cal.App.2d 587, 598; *People* v. *Alcala*, 169 Cal.App.2d 468, 471 [337 P.2d 558]; *People* v. *Allen*, 142 Cal.App.2d 267, 279 [298 P.2d 714]; and *People* v. *Mendoza*, 145 Cal.App.2d 279, 284 [302 P.2d 340].)

■ We are of the opinion that it was not error to admit the testimony of the conversations of the officers with the informants. The statement of any informant was not material to appellant's defense and furthermore the arrest was based upon the observations of the officer and what the appellant said to him.

Caskey claimed no privilege of nondisclosure but to the contrary was perfectly willing to disclose everything he knew about the identity of the informants. When, under the circumstances, an officer gives all of the information he has concerning the identity of his informants we think the rule of *Priestly* v. *Superior Court,* 50 Cal.2d 812 [330 P.2d 39] does not apply. (See *People* v. *Prewitt, supra,* 52 Cal.2d 330, 336-337.) No informant participated in the offense or charge lodged against the appellant.

It may be that the informant pointed the finger of suspicion at appellant, but in a situation where the officer made the arrest based upon what he, the officer, saw and heard, it is not ordinarily required that the identity of the informant be made. (*People* v. *Muniz, supra,* 172 Cal.App.2d 688, 691; *People* v. *Alcala, supra,* 169 Cal.App.2d 468, 471.)

It does not appear that an informer was a participant or a material witness to the offense charged, nor does it appear that any informant could have given any relevant testimony which would have been of any assistance to the appellant under the circumstances. (*People* v. *Alesi,* 169 Cal.App.2d 758, 761 [337 P.2d 838]; *People* v. *Cherrie,* 162 Cal.App.2d 143, 146 [327 P.2d 909].)

A reading of the entire record discloses no error upon the part of the trial judge.

The judgment (order granting probation) is affirmed.

Wood, P. J., and Lillie, J., concurred.