[Crim. No. 7899. Second Dist., Div. One. May 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RILEY LEE WILSON, SR., Defendant and Appellant.

H. Clay Jacke for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Samuel L. Williams, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of bookmaking (Pen. Code, § 337 a).

In an information filed in Los Angeles County the appellant was charged with three counts of bookmaking activities; count 1 charged a violation of section 337a, subdivision 1 of the Penal Code, count 2 charged a violation of section 337a, subdivision 2 of the Penal Code, and count 3 charged a violation of section 337a, subdivision 4 of the Penal Code. Appellant pleaded not guilty. A jury was waived and by stipulation the cause was submitted upon the testimony taken at the preliminary hearing. Appellant was found guilty as charged in count 3 and not guilty as to the remaining counts. The appeal is from the judgment.

A résumé of some of the facts is as follows: before March 10, 1961, the day of appellant's arrest, Officer Aldridge had received information from the vice and intelligence files of the police department that the establishment at 148 East Santa Barbara Street was a record shop owned and operated by the appellant and that bookmaking had been and was still

being conducted there. The officer knew that the appellant had been arrested 13 times and had been convicted of bookmaking. The officer had entered the premises at 148 East Santa Barbara Street many times before and had seen copies of the National Daily Reporter in the shop. The officer also had information that the appellant recorded his bets on the cash register top. On March 10, 1961, about 4:30 p.m. the officer and his partner parked their unmarked police car in the alley east of appellant's shop and then entered the shop through the front door. As they entered Aldridge saw appellant standing in the rear of the shop facing him and bending over the counter top looking at something on the counter. Aldridge walked rapidly to the rear, looked over the counter and saw a National Daily Reporter on the counter. Close to the Reporter was a green piece of paper upon which appellant was writing. The appellant picked up the green paper and folded it into his hand. The officer said, "Riley, let me see the paper" and thereupon appellant handed it to Aldridge. The officer saw that the green piece of paper contained 10 notations. The officer was acquainted with the bookmaking paraphernalia as used in Los Angeles County and at once recognized the paper as a betting marker. Aldridge was known to the appellant as a police officer. The appellant was asked why he was writing the wagers on the piece of green paper inasmuch as he ordinarily kept his bets on the cash register top. The appellant replied in effect that he had gotten careless and was writing on the green paper, further that the bets recorded were of bets at Santa Anita Park and that he "might as well admit it," that the officers "had him caught." Appellant also was asked by the officer if he kept the "action" for himself or if he sent some of it out, and appellant replied, according to the officer's testimony, in part that he "kept all his own action . . . and he settled up with the bettors after the race was run, at his place of business." Appellant admitted writing the marker in question.

Appellant now asserts that the evidence was secured in an illegal search and seizure and that there was no probable cause to arrest the appellant.

 There was in this case no search for the green piece of paper which constituted the marker. The paper was plainly visible to the officer and appellant was writing upon it when he first came into the view of the officer. It took no search to see what the officer saw. Appellant was not forcibly dispossessed of the paper; in fact the officer asked to see the

paper and appellant handed it over to him. The appellant voluntarily delivered the paper to the officer. Whether the evidence was surrendered voluntarily or under submission is a question of fact which has to be determined in the light of all of the circumstances of the case. (*People* v. *Michael,* 45 Cal.2d 751, 753-754 [290 P.2d 852].)

The appellant did not see fit to testify in his own behalf in this case and as a consequence we have no way of knowing what his mental processes were at the time in question. ▋ As said in *People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852]:

"Thus, it is not unreasonable for officers to seek interviews with suspects or witnesses or to call upon them at their homes for such purposes. Such inquiries, although courteously made and not accompanied with any assertion of a right to enter or search or secure answers, would permit the criminal to defeat his prosecution by voluntarily revealing all of the evidence against him and then contending that he acted only in response to an implied assertion of unlawful authority."

The facts in the case of *Badillo* v. *Superior Court,* 46 Cal.2d 269, 273 [294 P.2d 23], relied upon by the appellant, are not comparable to the facts in this case. ▋ There was no illegal entry into the appellant's shop and in fact there was no search of the shop or any part of it.

▋ Appellant argues that there was no probable cause for his arrest. ▋ In *People* v. *Brown,* 191 Cal.App.2d 72, 76 [12 Cal.Rptr. 534], this court said:

"Probable cause has been defined in general as being such a state of facts as would lead a man of ordinary care and prudence to believe or entertain an honest, strong suspicion that the person in question is guilty of a crime. (Citing *People* v. *Adame,* 169 Cal.App.2d 587, 598 [337 P.2d 477]; *People* v. *Carnes,* 173 Cal.App.2d 559, 565 [343 P.2d 626]; *People* v. *Jaurequi,* 142 Cal.App.2d 555, 559 [298 P.2d 896].)

▋ "We must look to the facts which the officer had at the time in question. (*People* v. *Cantley,* 163 Cal.App.2d 762, 765 [329 P.2d 993]; *People* v. *Adame, supra.*) ▋ Information received from others which might not in and of itself be sufficient to establish reasonable or probable cause may nevertheless be relevant when used with other evidence. (*People* v. *Prewitt,* 52 Cal.2d 330, 337 [341 P.2d 1]; *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36].)" (See also *People* v. *Criswell,* 192 Cal.App.2d 470 [13 Cal.Rptr. 294]; *People* v. *Smith,* 50 Cal.2d 149, 151 [323 P.2d 435]; *People* v. *Fisher,* 184 Cal.App.2d 308, 313 [7 Cal.Rptr. 461];

*People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577] ; *People* v. *Rios,* 46 Cal.2d 297, 298 [294 P.2d 39] ; Pen. Code, § 836.)

Penal Code section 337a makes it a crime for any person to (1) engage in bookmaking, or (2) occupy any room with papers or device for the purposes of recording or registering any bets or purported bets on the result or purported result of any lot, chance or contingent event, . . . or (4) record or register any bet. Aldridge had information that appellant owned and operated the record shop on East Santa Barbara Street, that bookmaking had been and was being conducted at the place in question, the officer knew appellant had been arrested 13 times and had bookmaking experience. The officer had been in the place of business many times and had information that appellant recorded his bets upon the top of the cash register. The officer saw appellant write upon the green sheet marker and saw the National Daily Reporter. The information contained in the vice files, coupled with the officer's other information, and appellant's admission of guilt certainly would lead even the most wary to believe that appellant probably had violated Penal Code section 337a, subdivisions 1, 2 and 4.

The record of guilt is clear and the appellant was fairly and properly tried.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.